MADELINE JASMINE, Judge Pro Tempore.
 

 ^Defendant Glenn C. Ayo appeals his conviction for armed robbery, a violation of
 
 *89
 
 LSA-R.S. 14:64, and his conviction for resisting an officer, a violation of LSA-R.S. 14:10s.
 
 [1]
 
 On appeal, counsel for Mr. Ayo argues the following assignments of error:
 

 1. The trial court erred by failing to suppress the identification obtained in violation of the defendant’s constitutional rights.
 

 2. A mistrial should have been granted.
 

 Defendant also filed a
 
 pro se
 
 supplemental brief arguing the following assignments of error:
 

 1. The trial court erred by failing to suppress the seizure of Mr. Ayo, finding police “not in close or hot pursuit of person to be arrested may enter another jurisdiction and forcibly stop and (investigate) any citizen on whim, violating Mr. Ayo’s Fourth and Fourteenth Amendment Constitutional Right(s).
 

 ┴32. Trial Court erred by precluding Defense from cross-examining arresting officer on relevant “material” issued) in violating Mr. Ayo’s Fourth and Fourteenth Amendment Constitutional Right(s).
 

 3. Trial Court committed fundamental error by not exercising judicial authority stopping the prosecution’s obvious use of known perjured testimony, and, from the record, Defense Counsel rendered ineffective assistance by not impeaching or objecting, condoning the same, fraud on court, violating Mr. Ayo’s Sixth and Fourteenth Amendment Constitutional Right(s).
 

 4. Trial court erred by failing to suppress the seizure of Mr. Ayo and alleged evidence, finding that police bare-face observation of construction worker possessing [unjconcealed knife, which violates no law, had probable cause as “private citizen” to immediately arrest, violating Mr. Ayo’s Fourth, Fifth and Fourteenth Amendment Constitutional Right(s).
 

 5. Trial court erred by failing to suppress the seizure of alleged evidence, finding that construction worker’s possession of [un]eoncealed knife, which violated no law, was seized incident to arrest, violating Mr. Ayo’s Fourth and Fourteenth Amendment Constitutional Right(s).
 

 6. Trial court erred by failing to suppress seizure of jacket in cab, not in “plain view” and beyond control of Mr. Ayo, violating Mr. Ayo’s Fourth and Fourteenth Amendment Constitutional Right(s).
 

 7. Trial court erred by failing to suppress one-on-one identification, finding it not suggestive or that a likelihood of misidentification occurred, violating Mr. Ayo’s Fourth and Fourteenth Amendment Constitutional Right(s).
 

 8. Trial court erred by not continuing trial, and “not” addressing multiple ineffective assistance of counsel claim(s) in pretrial writ, violating Mr. Ayo’s Sixth and Fourteenth Amendment Constitutional Right(s).
 

 9. Trial Court erred by failing to grant a mistrial when the State committed fundamental error and “perjury” by fraudulently informing jury that Mr. Ayo is wanted for a parole violation, when Mr. Ayo has (never) been on parole, violating his Sixth and Fourteenth Amendment Constitutional Right(s).
 

 
 *90
 
 10. Trial court erred by admitting evidence agreed upon in pretrial not to introduce, violating Mr. Ayo’s Sixth and Fourteen Amendment Constitutional Right(s) to a fair trial.
 

 11. Trial court erred in not intervening and properly govern proceedings, stopping State’s repeated improprieties denying Mr. Ayo’s right to a fair and impartial trial, violating his Sixth and Fourteenth Amendment Constitutional Right(s).
 

 |4Pefendant was convicted on November 28, 2007, following trial by jury, whose verdict was unanimous. On the same date, he was also convicted by judge of the related misdemeanor offense of resisting an officer. On December 5, 2007, the defendant was sentenced, on the armed robbery charge, to serve 87 years incarceration of hard labor without the benefit of probation, parole, or suspension of sentence. On the resisting an officer conviction, defendant was sentenced to 6 months in jail, to run concurrently with the above sentence.
 

 FACTS
 

 The eighty-eight year old victim, Baptiste DeBroy, testified at trial that on the morning of January 7, 2007, he and his wife went to a warehouse located at 250 Iris Avenue, Jefferson, Louisiana, in order to distribute beads to members of a Mardi Gras krewe. As they walked toward the building, a white man in a hooded blue jacket approached Mr. DeBroy, pulled him behind the building, knocked him down, and put a knife to his throat. The victim testified that the knife looked like a kitchen knife with approximately a six-inch blade. The man demanded the victim’s wallet and ordered Mr. DeBroy not to look at him, covering his own head with the hood of his jacket. However, the victim testified that he got a good look at the robber from close range before he donned the hood. Mr. DeBroy told the robber that he did not have a wallet, whereupon the robber demanded his cash. Mr. De-Broy turned over all his cash, amounting to $28,
 
 [2]
 
 and the robber started to leave, going towards River Road. He came back and told the victim, “If you get up, I’m going to stick you.” The robber then left in the direction of Jefferson Highway.
 

 |r,Mr. DeBroy immediately went inside the warehouse and announced that he had been robbed. He spoke to the 911 operator and described the robber, his clothing, and the knife. Members of the Jefferson Parish Sheriffs Office (JPSO) responded and began an investigation. The 911 tape was played to the jury.
 

 Lieutenant Danny Jewell, JPSO, testified that the warehouse belonged to his family and that he lived nearby. On the morning of January 7, 2007, he was off-duty when he was awakened by his uncle, who reported a robbery on the premises. Lieutenant Jewell met with the victim, who gave a detailed description of the robber and the knife. Jewell began to canvas the neighborhood in his unmarked police unit. He did not operate his lights or sirens in pursuit. Jewell testified that he did not activate his lights and sirens because that action would give away his identity to suspects.
 

 Within thirty minutes of the robbery, while searching the immediate area, Jewell heard on the police radio that a suspect had been detained in the 800 block of Jefferson Highway and that the victim was being brought to view the suspect. As
 
 *91
 
 Jewell drove to that location, he saw a dark-haired, clean shaven, white male, wearing a green tee shirt on Cicero Street, near Jefferson Highway. Jewell testified that due to the detention of the first suspect, he did not investigate this man further at that time.
 

 The victim immediately excluded the first suspect as the robber. Shortly after-wards, Jewell returned to Cicero Street to look for the man he had seen earlier. He was no longer in sight, but workers in the area told him that the man in the green shirt had just gotten into a blue cab, headed towards New Orleans. Jewell proceeded toward Jefferson Highway, which turns into Claiborne Avenue at the parish line, looking for the blue cab.
 

 ItiEn route, Jewell heard on the police radio that a subject in a blue cab had been found at a gas station on Claiborne Avenue. When he arrived at the gas station, the suspect had already been detained by police. The subject was the same man that Jewell had seen on Cicero Street a few moments earlier. The victim was brought to the scene and identified the defendant as the robber. This identification was made within an hour of the robbery.
 

 At trial, Lieutenant Jewell positively identified the defendant as the man discovered at the gas station after the robbery. A blue hooded sweatshirt was found on top of the defendant’s green bag, recovered on the back seat of the cab.
 

 At trial, the victim made a positive in-court identification of the defendant as the robber. He also positively identified a photograph of the defendant as the man who robbed him. He positively identified the blue hooded jacket and stated that the six-inch kitchen knife looked like the knife used in the robbery. The victim was cross-examined extensively regarding his physical description of the perpetrator.
 

 Deputy George McCoy, JPSO, testified that he was on patrol on January 7, 2007 when he was dispatched to 250 Iris to investigate an armed robbery. He obtained a description of the robber from the victim and completed the information sheet. Deputy McCoy took the victim in his car to view an initial suspect. The victim immediately stated that this suspect was not the robber.
 

 Soon afterwards, Deputy McCoy transported the victim to view a second suspect. When he arrived at the Spur station, he saw Deputy Simoneaux attempting to restrain the subject. The victim told him that the man was the robber. At trial, McCoy identified the defendant as the man arrested that day.
 

 Deputy Paul Simoneaux, JPSO, testified that he was assigned as a backup officer on the robbery investigation. After the victim excluded the first suspect as |7the robber, he heard on the police radio that Deputy McCoy saw a suspect getting into a cab, heading toward New Orleans. Si-moneaux followed McCoy’s unit to the Spur gas station in New Orleans. He saw a man matching the suspect’s description exit the cab, handing what appeared to be money to the driver. As Simoneaux approached, he saw a kitchen knife sticking out from the suspect’s back pocket. During a search incident to arrest, a twenty dollar bill and a one dollar bill were recovered from the defendant’s pocket. At trial, Deputy Simoneaux positively identified the defendant as the man arrested that day and noted that at his arrest, the defendant gave police a false name and date of birth. Simoneaux described changes to the defendant’s physical appearance in the months following the robbery, stating that he was heavier at trial.
 

 The defendant exercised his right to testify at trial and stated that the victim’s
 
 *92
 
 identification was mistaken. He explained his possession of a kitchen knife, testifying that he carried this knife in order to strip copper from wires in demolished homes in connection with his post-Katrina job. He admitted that he was in possession of a blue jacket and a kitchen knife and that he gave a false name upon arrest.
 

 COUNSELED ASSIGNMENT OF ERROR NUMBER ONE
 

 The trial court erred by failing to suppress the identification obtained in violation of the defendant’s constitutional rights.
 
 [3]
 

 PRO SE ASSIGNMENT OF ERROR NUMBER ONE
 

 [4]
 

 |sThe trial court erred by failing to suppress the seizure of Mr. Ayo, finding police “not in close or hot pursuit of person to be arrested may enter another jurisdiction and forcibly stop and (investigate) any citizen on whim, violating Mr. Ayo’s Fourth and Fourteenth Amendment Constitutional Right(s).
 

 PRO SE ASSIGNMENT OF ERROR NUMBER SEVEN
 

 Trial court erred by failing to suppress one-on-one identification, finding it not suggestive or that a likelihood of misidenti-fication occurred, violating Mr. Ayo’s Fourth and Fourteenth Amendment Constitutional Right(s).
 

 The defendant argues that the trial court erred by failing to suppress the identification, which he contends was obtained in violation of his constitutional rights and was unduly suggestive. He first argues that the victim’s on-scene identification was a prohibited “show-up” identification. He next argues that his arrest in New Orleans by Jefferson Parish officers was illegal due to the absence of an arrest warrant and lack of jurisdiction.
 

 Prior to trial, the defense filed motions to suppress the identification and evidence, as well as other pretrial motions. At the motion to suppress hearing, the victim and two police officers testified regarding the identification procedures. At the conclusion of their testimony, the court denied the defense motions.
 

 At trial, extensive cross-examination of the victim and the officers revealed inconsistencies in the victim’s physical description of the robber. Based on the vagueness and inconsistencies of the description, the defendant argues that the court should have granted his motion to suppress the identification. The defendant also argues, as he did before trial, that his arrest was unlawful because it was made in the city of New Orleans by the Jefferson Parish Sheriffs Office. The defendant places much reliance on the fact that the officers did not turn on their police sirens and overhead lights as they pursued him into Orleans Parish.
 

 Motion to Suppress Identification
 

 Physical Description
 

 | oThe burden of proof on a motion to suppress is on the defendant. LSA-
 
 *93
 
 C.Cr.P. art. 703(D). A trial court’s decision to deny a motion to suppress is afforded great weight by the reviewing court.
 
 State v. Raines,
 
 00-1941 (La.App. 5 Cir. 5/30/01), 788 So.2d 635, 639,
 
 writ denied,
 
 01-1906 (La.5/10/02), 815 So.2d 833.
 

 The admissibility of an identification is controlled by
 
 Manson v. Brathwaite,
 
 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977);
 
 State v. Williams,
 
 08-272, p. 3, (La.App. 5 Cir. 12/16/08), 3 So.3d 526. Viewing the evidence from a totality of the circumstances, the trial court should consider whether suggestiveness presents a substantial likelihood of misidentifícation. This review is based on five specific factors: 1) the opportunity of the witness to observe the perpetrator at the time of the crime, 2) the witness’ degree of attention at the time of the crime, 3) the accuracy of his prior description of the offender, 4) the level of certainty displayed at the confrontation, and lastly, 5) the time between the crime and the confrontation.
 
 Id.
 
 at 115, 97 S.Ct. 2243.
 

 This Court has noted that the likelihood of misidentifícation of a suspect may violate due process, but the mere existence of suggestiveness is not an automatic constitutional violation.
 
 State v. Hurd,
 
 05-258, p. 5 (La.App. 5 Cir. 11/29/05), 917 So.2d 567, 570. Although “show up” or one-on-one identifications are not favored in law, circumstances may justify the use of such procedures. One such exception is when the suspect is apprehended and viewed soon after the crime. Such immediate identifications increase accuracy in identification and provide for the expeditious release of innocent suspects.
 
 State v. Spurlock,
 
 08-163, p. 8 (La.App. 5 Cir. 5/27/08), 986 So.2d 89, 94.
 

 In applying these factors, we find that the trial court correctly denied the motion to suppress the identification. At the suppression hearing, the victim | intestified that during the robbery, he had a clear, close, and well-lit view of the robber. The victim’s undiverted attention was focused on the robber. Moments after the robbery, the victim gave police his best physical description of the robber and his clothing. Although there was a range of possible weights given by the victim, it is critically important that the victim
 
 excluded
 
 a suspect stopped by police shortly after the robbery.
 

 Even more important than his physical description, the victim positively identified the defendant less than an hour after-wards. The victim explained to the jury that he had been unable to identify the defendant at the motion to suppress hearing, because there were many defendants seated together in the jury box, all dressed alike. At the time of trial, however, he again positively identified the defendant as the man who robbed him.
 

 In brief, the defendant places great emphasis on the differing physical descriptions of the robber as described by the victim. During direct examination at trial, the victim testified that he told officers that the robber, a white male, was around 5'7" or 5'8". He stated that he may have told police that the robber was 150 pounds or he may have said 135 or 170 pounds. The transcript of the 911 tape states 170 lbs. He informed officers that the robber was between forty and fifty years old. Notably, at trial, the state introduced the prison intake assessment which established that on February 24, 2007, the defendant’s weight was 181 and his height was 5'7". The prison’s nurse practitioner testified that defendant’s weight on the day of trial was 212 lbs.
 

 Cross-examination of witnesses provides an opportunity to challenge identifications. The elderly victim in this case admitted to having given somewhat unspecific descrip
 
 *94
 
 tions of the robber, such as possibly stating that his weight was 150, 135, or 170 pounds. He also stated that he may have said the robber was |n around thirty years of age. Any discrepancies between the description of the perpetrator and the defendant as he appeared at trial were fully explored and known to the jury.
 

 Most importantly, the victim made a positive identification of the defendant at trial. This was a daylight robbery in which the victim had an opportunity to view the robber at close range. The victim made an immediate report of the crime, gave a description of the robber’s clothing and appearance, and made a positive identification of the defendant within an hour of the robbery.
 

 Notably, the victim excluded the first subject detained by the police and only made a positive identification of the defendant after viewing him at close range. The victim testified at trial that the police officers did not suggest to him that he should identify the defendant as the robber. Thus it appears that all five
 
 Brath-waite
 
 factors are present and the identification of the defendant was reliable.
 

 For these reasons, we find that the trial court did not err in denying the motion to suppress the out-of-court identification.
 

 Close Pursuit
 

 The defendant next complains that his arrest was illegal because it took place in Orleans Parish but was conducted by Jefferson Parish Sheriffs officers. He contends the trial court should have granted his motion to suppress because the arresting officers were outside of their territorial boundaries.
 

 In urging this motion, the defendant places much reliance on the law relating to a citizen’s arrest. By statute, a private person may make an arrest when the person arrested has committed a felony, whether in or out of his presence. LSA-C.Cr.P. art. 214. Although all conditions of a citizen’s arrest are satisfied in this case, the arrest passes muster as a close pursuit by a peace officer.
 

 |12A warrantless arrest by a peace officer is lawful when the person to be arrested has committed a felony or the officer has reasonable cause to believe the person has committed an offense. LSA-C.Cr.P. art. 213(2), (3). In addition, the common law doctrine of fresh pursuit is codified in LSA-C.Cr.P. art. 213(4). Under this article, a peace officer in close pursuit of a person to be arrested is authorized to enter another jurisdiction of this state to make that arrest.
 
 [5]
 

 Louisiana case law gives full weight to the doctrine of close pursuit. See, for example,
 
 United States v. Bishop,
 
 530 F.2d 1156, 1157 (5 Cir.1976). In a case construing Louisiana law, the court found close pursuit to be present in the investigation of a bank robbery in Caddo Parish. Shreveport Police stopped and arrested the suspect in Bossier Parish. The arrest was found to be legally valid under the “close pursuit” statute, even though the
 
 *95
 
 arrest occurred outside the arresting officers’ jurisdiction, without the assistance of local law enforcement officers.
 

 In
 
 State v. Washington,
 
 444 So.2d 320 (La.App. 1 Cir.1983),
 
 writ denied,
 
 445 So.2d 450 (La.1984), a robbery occurred at a Raceland bank near the border of La-fourche and St. Charles Parishes. Assisted by a tracking dog, the Lafourche Parish sheriffs officers began trailing the robbers on foot. Officers encountered the defendants on the railroad track in adjoining St. Charles Parish within two hours of the robbery. When found, the suspects were only five and a half miles from the scene of the robbery. The exception of close pursuit applied and the arrest was upheld.
 
 Id.
 
 at 324.
 

 | mThe exception of close pursuit applies in this case. The arrest took place within an hour of the crime a few blocks over the adjoining parish line. The arrest was the result of an uninterrupted investigation by responding police officers. The pursuit of the defendant, initiated in Jefferson Parish, was immediate and continuous. Furthermore, the defendant was detained after he hired a cab and was leaving the area of the robbery. The pursuing officers saw a kitchen knife, matching the description of the weapon used in the robbery, sticking out from the defendant’s pants. Within minutes of the defendant’s detention and within an hour of the robbery, the victim made a positive identification. This assignment of error has no merit.
 

 COUNSELED ASSIGNMENT OF ERROR NUMBER TWO
 

 The defendant argues that a mistrial should have been granted due to the prosecutor’s reference to other crimes committed by the defendant. In a related vein, he also contends in this assignment that a mistrial should have been granted after the prosecutor asked the defendant if he knew that his friend Theo Brickley, who was subpoenaed to testify on his behalf (but whom the state was unable to serve and therefore was not present at trial), had recently been convicted of four felonies.
 

 During direct examination, the defendant admitted his 1994 conviction for manslaughter in the State of Florida. Counsel for the defendant characterized this crime as an accidental death, resulting in the prosecutor following up to ask the defendant if he received a seventeen-year sentence for this “accidental” crime. The defendant admitted the manslaughter conviction and seventeen-year sentence but denied that he was on parole. The prosecutor then inquired if he would be surprised to learn that a detainer to return him to Florida was in effect. At this 114point in the exchange, the defense moved for a mistrial but the court denied that request. The court ordered that the exchange in question be stricken from the record and disregarded by the jury.
 

 A mistrial shall be ordered when a remark, made within the hearing of the jury, by a judge, district attorney, or court official, refers to another crime committed or alleged to have been committed by the defendant when this evidence is not admissible. LSA-C.Cr.P. art. 770(2).
 

 A mistrial is a drastic remedy. Except where mandated by statute, a mistrial is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial.
 
 State v. Ballay,
 
 99-906, p. 14 (La.App. 5 Cir. 2/29/00), 757 So.2d 115, 126,
 
 writ denied,
 
 00-0908 (La.4/20/01), 790 So.2d 13. The decision to grant or deny a mistrial is within the sound discretion of the trial court, and that decision will not be disturbed absent an abuse of that discretion.
 
 Id.
 

 It was the defendant who brought up the fact of his prior conviction for man
 
 *96
 
 slaughter. It is a well-recognized principle that when one side has partially gone into a matter during its direct examination, the other side may fully go into it on cross-examination.
 
 State v. Smart,
 
 05-814, p. 12 (La.App. 5 Cir. 3/14/06), 926 So.2d 687, 647. The evidence of the defendant’s conviction for manslaughter was elicited directly from the defendant on direct examination; even on appeal, the defendant does not complain evidence of this conviction was improperly admitted. From the defendant’s own testimony, the jury was aware of his criminal history. The defendant testified, without objection, that he had an attachment from Florida. It is notable also that the prosecutor did not allege that the defendant had committed additional crimes but rather questioned him regarding an outstanding detainer. The reference to the term detainer was not defined or explored further.
 

 | x,-,The state’s limited reference to an outstanding detainer related to a crime that had already been admitted by the defendant. Furthermore, in charging the jury at the conclusion of the trial, the judge instructed the jury that statements and arguments made by the attorneys were not evidence, thus protecting against any prejudice that might have arisen. This practice is in accord with that of
 
 State v. Pardon,
 
 97-248, p. 14 (La.App. 5 Cir. 10/15/97), 703 So.2d 50, 62, in which the court instructed the jury that statements and arguments by counsel were not evidence. On appeal, this Court held that this instruction cured any error and that therefore the defendant suffered no prejudice. Accordingly, we see no abuse of the trial court’s discretion.
 

 The defendant next complains that the trial court should have granted a mistrial due to the prosecutor’s references to the convictions of the defendant’s friend, Theo Brickley. During direct examination, the defendant testified that he got a ride from Theo Brickley on the morning of the robbery. During cross-examination, the prosecutor asked whether Mr. Brickley would testify at trial. The defendant responded that Brickley had not been served to appear in court and would not testify. The prosecutor asked the defendant if he knew that Brickley had recently been convicted of four felonies in another section of court. Before an answer could be given and after an immediate objection, the prosecutor voluntarily stated that she would not pursue this line of questioning any further. The trial court denied the motion for a mistrial and no further questioning along this line took place.
 

 The trial court did not err in denying the motion for mistrial. In light of all the testimony introduced at trial, the brief, unanswered question into Theo Brickley’s recent convictions did not create an unfair trial. Furthermore, the trial | irjudge specifically charged the jury that statements and arguments made by the attorneys are not evidence.
 

 A trial court’s ruling shall not be reversed by an appellate court because of any error which does not affect substantial rights of the accused. LSA-C.Cr.P. art. 921. As this Court recently held, harmless error is present when the guilty verdict actually rendered was surely unattributable to the error.
 
 State v. Lemeunier,
 
 07-230, p. 9 (La.App. 5 Cir. 5/27/08), 986 So.2d 130, 136.
 

 In this case, the evidence of the victim and police officers, if believed by the trier of fact, established all the elements of the crime of armed robbery. In light of the strength of the evidence against the defendant, the guilty verdict was “surely unattributable” to the alleged references to other crimes. This assignment of error has no merit.
 

 
 *97
 

 PRO SE ASSIGNMENT OF ERROR NUMBER TWO
 

 Trial Court erred by precluding Defense from cross-examining arresting officer on relevant “material” issue(s) in violating Mr. Ayo’s Fourth and Fourteenth Amendment Constitutional Right(s).
 

 The defendant argues that at the hearing on his motion for a preliminary examination and his motion to suppress, the trial court erroneously and unfairly curtailed defense questioning on issues of jurisdiction, an investigatory stop, and the lawfulness of his arrest.
 

 The defendant directs this Court’s attention to the cross-examination of Deputy Simoneaux during the motion to suppress and preliminary examination, held on August 16, 2007.
 
 [6]
 
 When defense counsel asked this officer if he was commissioned as a law enforcement officer in Orleans Parish, the prosecutor 117objected. The objection was sustained. A bench conference was held but no objection or proffer of testimony was put on the record.
 

 It is critically important that the defendant’s complaint addresses curtailment of questioning at a motion hearing, not at trial. The defendant’s constitutional confrontation rights are not affected by questioning at a motion hearing.
 
 State v. Harris,
 
 08-2117 (La.12/19/08), 998 So.2d 55. In
 
 Harris,
 
 the Supreme Court specifically held that the right to confrontation contained in the United States and the Louisiana Constitutions is not implicated in a pre-trial matter.
 

 In addition to the fact that the confrontation clause does not apply to a pretrial hearing, this issue is not preserved for appellate review. In
 
 State v. Stevenson,
 
 02-0079 (La.App. 5 Cir. 4/30/02), 817 So.2d 343, this Court addressed an argument that the trial court erred in failing to allow defense counsel to fully cross-examine and impeach a police officer. The defendant desired to ask the officer about the law pertaining to booking a suspect. The trial court did not allow such questioning and on appeal, the defendant argued that he was unable to show the jurors the corruption of the police officers. The defendant objected but did not proffer the testimony of the officer. In denying relief on this claim on appeal, this Court relied on LSA-C.E. art. 103(A)(2), which provides that in order to preserve the right to appeal a trial court ruling that excludes evidence, the defendant must make the substance of the evidence known to the trial court. The defendant failed to proffer the substance of the excluded testimony and was precluded from raising the issue on appeal.
 

 This pro se assignment of error merits little consideration.
 

 h¡¡PRO SE ASSIGNMENT OF ERROR NUMBER THREE
 

 Trial Court committed fundamental error by not exercising judicial authority stopping the prosecution’s obvious use of known perjured testimony, and, from the record, Defense Counsel rendered ineffective assistance by not impeaching or objecting, condoning the same, fraud on court, violating Mr. Ayo’s Sixth and Fourteenth Amendment Constitutional Right(s).
 

 The defendant first argues that Deputy Jewell’s testimony was false and knowingly presented by the state. Next, he argues that the court abused its discretion by allowing this perjured testimony to be presented, although he does not assert, and the record does not show, that he objected
 
 *98
 
 to the officer’s testimony in the trial court. Next, the defendant argues that perjury is shown by the fact that the victim could not identify the defendant at the suppression hearing but could make a positive identification at trial. In his final subclaim, the defendant argues that his attorney was constitutionally ineffective for failing to object to the use of perjury.
 

 The defendant relies on the leading perjury case,
 
 Napue v. Illinois,
 
 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). In
 
 Napue,
 
 the Supreme Court of the United States held that where a prosecutor allows a state witness to give false testimony without correction, a reviewing court must reverse the conviction if the witness’s testimony reasonably could have affected the jury’s verdict, even if the testimony goes only to the credibility of the witness.
 

 This Court in
 
 State v. Singleton,
 
 05-634 (La.App. 5 Cir. 2/14/06), 923 So.2d 803, addressed a perjury claim raised for the first time on appeal. The Court held that since the defendant failed to object during trial to the testimony as perjury, he waived his right to assert the error on appeal.
 

 Although the defendant argues at length that false testimony was introduced in his trial, he points to the record, not newly discovered, external sources, to prove his allegation. He points to internal contradictions in the testimony to support his | ^claims, thus establishing that the substance of the claim, and its factual underpinnings, were known to him at the time of trial. Although the claim was known to him, the defendant did not afford the trial court an opportunity to rule on his perjury claim. Therefore, he is precluded from raising it for the first time on appeal.
 

 The defendant alleges that Detective Jewell’s testimony was perjured. Specifically, he alleges that although Jewell testified that he informed “911” that the defendant had a knife in his pocket, that in fact, he never told “911” any such thing. He alleges that at the time 911 was called by the victim, that Officer Jewell had not yet even seen nor spotted the defendant.
 

 The defendant is apparently confusing the 911 call made by the victim with the dispatch call made by Officer Jewell. In the dispatch made by Officer Jewell, he informed the dispatcher that he saw the defendant with a knife in his pocket. The dispatch call was different from the 911 call made by the victim. This claim has no merit.
 

 In his third subclaim, the defendant argues that the state contrived the victim’s positive in court identification. The defendant repeatedly argues that, absent fraud, seventy-two percent of the jury would have returned a not guilty verdict.
 
 [7]
 

 The defendant correctly notes that the victim testified at the motion to suppress hearing that he could not make a positive identification of the robber. The record establishes that during the motion to suppress hearing, the victim testified that the man he identified that day was the robber. In response to the question during cross-examination of whether he could identify in court the |2oindividuaI who robbed him, the victim replied, “No, not today. I did that day when I was face to face with him. I cannot — I can’t say I would do it today, no.” At trial, the victim positively identified the defendant as the man who robbed
 
 *99
 
 him. He was questioned thoroughly about this issue and explained his failure to identify the robber at the suppression hearing as both uncertainty due to the number of identically-dressed defendants seated in the jury box, and a reluctance to identify the wrong person in the absence of certainty.
 

 Clearly, the credibility of a witness is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. It is not the function of the appellate court to assess credibility or reweigh the evidence.
 
 State v. Longo,
 
 08-405 (La.App. 5 Cir. 1/27/09), 8 So.3d 666, 2009 WL 196358. It is also well settled that a positive identification of only one witness is sufficient to support a conviction.
 
 State v. Williams,
 
 02-645 (La.App. 5 Cir. 11/26/02), 833 So.2d 497, 503,
 
 writ denied,
 
 02-3182 (La.4/25/03), 842 So.2d 398.
 

 The jury was aware that the victim did not make a positive identification of the defendant at the motion to suppress hearing, although he made a positive identification of the defendant shortly after the robbery and at trial. The jury’s finding of guilt reveals that they found the witness credible and believed his identification of the defendant.
 

 In his final complaint under this assignment of error, the defendant complains that his attorney was ineffective for failing to object to the use of perjured testimony. A claim for ineffective assistance of counsel is most typically and efficiently addressed in an application for post-conviction relief, where a full eviden-tiary hearing can be conducted, rather than on direct appeal.
 
 State v. McIntyre,
 
 97-876, p. 10 (La.App. 5 Cir. 1/27/98), 708 So.2d 1071, 1075,
 
 writ denied,
 
 98-1032 (La.9/18/98), 724 So.2d 753. However, where the record |¾1 contains sufficient evidence to decide the issue, and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy.
 
 Id.
 

 Notably, although the defendant points to discrepancies in testimony between witnesses, he does not establish that perjury occurred in his trial. The defendant also makes factual allegations of what he contends his attorney knew at the time of trial and on his allegation that the prosecutor allowed perjured testimony to be presented at trial. None of these allegations are supported by the record. The trial court record, therefore, is insufficient to review the facts addressing the defendant’s claim of ineffective assistance of counsel. As presented on appeal, this assignment of error has no merit.
 

 PRO SE ASSIGNMENT OF ERROR NUMBER FOUR
 

 Trial court erred by failing to suppress the seizure of Mr. Ayo and alleged evidence, finding that police bare-face observation of construction worker possessing [un]concealed knife, which violates no law, had probable cause as “private citizen” to immediately arrest, violating Mr. Ayo’s Fourth, Fifth and Fourteenth Amendment Constitutional Right(s).
 

 PRO SE ASSIGNMENT OF ERROR NUMBER FIVE
 

 Trial court erred by failing to suppress the seizure of alleged evidence, finding that construction worker’s possession of [un]eoncealed knife, which violated no law, was seized incident to arrest, violating Mr. Ayo’s Fourth and Fourteenth Amendment Constitutional Right(s).
 

 Pro se assignments of error four and five allege related complaints and are addressed together. The defendant argues, as he did in his pro se motion to suppress the evidence, that in order to justify a
 
 *100
 
 warrantless search as incident to an arrest, the arrest itself must be a “lawful” arrest.
 

 The arrest of the defendant was made by Officer Simoneaux. This arrest was based on the description of the robber broadcast on the police radio. The lijgSupreme Court of the United States has expressly concluded that if a law enforcement bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on the bulletin justifies a stop to check identification.
 
 United States v. Hensley,
 
 469 U.S. 221, 232, 105 S.Ct. 675, 682, 83 L.Ed.2d 604 (1985).
 

 Furthermore, probable cause existed to support the defendant’s arrest. Probable cause to arrest exists when the facts and circumstances, either personally known to the arresting officer or of which he has reasonable and trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime.
 
 State v. Fisher,
 
 97-1133, p. 7 (La.9/9/98), 720 So.2d 1179, 1184.
 

 The police in this case had a reasonable and trustworthy report of an armed robbery where the dangerous weapon was a knife, along with a physical description of the robber. The defendant, who matched the description given, was found shortly after the robbery, attempting to leave the area. Upon detection, the defendant was arrested by Deputy Simoneaux when he saw him at a gas station. Visible protruding from the defendant’s back pocket was a knife handle.
 

 These circumstances constitute probable cause. As the Supreme Court of Louisiana noted in
 
 State v. Johnson,
 
 363 So.2d 684, 689 (La.1978) that “[o]ne of the most important elements in determining whether probable cause existed is satisfied when the police know a crime has actually been committed. When a crime has been committed and the police know it, they only have to determine whether there is reasonably trustworthy information to justify a man of ordinary caution in believing the person to be arrested has committed the crime.” The police in this case knew that an armed robbery had just occurred and they had reasonably trustworthy information on the robber’s description sufficient to justify ⅛ man of ordinary caution in believing the defendant had committed this robbery. This assignment of error has no merit.
 

 In a subclaim, defendant argues that the currency seized from him at arrest should have been suppressed, based upon inconsistent and perjured testimony from the officers, and that the money was abandoned after defendant was unlawfully seized, and that the chain of custody was not proved. A review of the record shows that although the issue was raised in the motion to suppress, the defendant failed to object at trial to the introduction of the currency. Accordingly, the issue was waived and not preserved for appeal.
 

 PRO SE ASSIGNMENT OF ERROR NUMBER SIX
 

 Trial court erred by failing to suppress seizure of jacket in cab, not in “plain view” and beyond control of Mr. Ayo, violating Mr. Ayo’s Fourth and Fourteenth Amendment Constitutional Right(s).
 

 The defendant argues that the trial court should have suppressed the evidence of his windbreaker. He argues that the recovery of his windbreaker from his travel bag inside the cab was unreasonable because it was outside his immediate control. He also contends that the incriminating nature of the seized evidence was not immediately apparent.
 

 
 *101
 
 The defendant, pro se, raised a pretrial challenge to the seizure of the windbreaker from his travel bag. The trial court heard this argument (and other arguments) in a hearing on motions to suppress and for a preliminary examination and found that the evidence was lawfully seized.
 

 The defendant’s reliance on “plain view” case law is misplaced. It is well established that when a lawful arrest is made of an occupant (or recent occupant) of a vehicle, law enforcement officers have the right to search the entirety of the passenger compartment, including closed containers found in the passenger 124compartment, as a contemporaneous incident of the lawful arrest.
 
 New York v. Belton,
 
 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). See also
 
 State v. Warren,
 
 05-2248 (La.2/22/07), 949 So.2d 1215.
 
 Belton
 
 is not limited to situations where suspects remain in their vehicles when approached by the police. See
 
 Thornton v. United States,
 
 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004), where the police stopped the driver of a vehicle for a traffic violation after he had parked and left his car. The driver consented to a pat down during which he admitted possession of illegal drugs on his person. Police arrested the driver and put him in the patrol car before searching the vehicle and discovering a handgun under the driver’s seat. The High Court concluded that so long as an arrestee is the sort of recent occupant of a vehicle “such as [the driver] was here,” law enforcement officers could lawfully search the vehicle incident to the arrest.
 
 Thornton
 
 at 623, 124 S.Ct. at 2132.
 

 This pro se assignment of error has no merit.
 

 PRO SE ASSIGNMENT OF ERROR NUMBER SEVEN
 

 Trial court erred by failing to suppress one-on-one identification, finding it not suggestive or that a likelihood of misidenti-fication occurred, violating Mr. Ayo’s Fourth and Fourteenth Amendment Constitutional Right(s).
 

 The portion of the defendant’s argument that the victim’s identification constituted a prohibited show-up identification has been addressed at length in connection with the first counseled assignment of error.
 

 In an additional claim, the defendant argues that he should have been extradited to Jefferson Parish after his arrest in Orleans Parish. He relies in part on a federal statute, 18 U.S.C.A. § 3182, which has no applicability to his arrest for a violation of Louisiana law.
 

 LSA-C.Cr.P. art. 228 provides that “[i]t is the duty of every peace officer making an arrest, or having an arrested person in his custody, promptly to conduct |⅛-the person arrested to the nearest jail or police station and cause him to be booked.” This Court, in
 
 State v. Stevenson,
 
 02-0079 (La.App. 5 Cir. 4/30/02), 817 So.2d 343, addressed the argument the defendant now makes.
 

 Through his questions, the defendant in
 
 Stevenson
 
 attempted to show that under article 228, he should have been taken to Orleans Parish for booking rather than the Gretna Police Station in Jefferson Parish. On appeal, he argued that the failure of the police to book him in Orleans Parish supported his defense that the police planted drugs on him while he was at the Gretna Police Station. The defendant argued that, in order to present his defense, he should have been allowed to fully cross-examine the officer on the law pertaining to booking a suspect.
 

 On appeal, this Court found that the defendant did not preserve his right to appeal on this claim. During his questioning, the State objected and the trial court sustained the objection. The defendant
 
 *102
 
 objected to the ruling but did not proffer the testimony of the officer related to this line of questioning.
 

 Similarly, the defendant in this case did not preserve the alleged error relating to the location of booking for appeal. This assignment of error has no merit.
 

 PRO SE ASSIGNMENT OF ERROR NUMBER EIGHT
 

 Trial court erred by “not” addressing multiple ineffective assistance of counsel claim(s) in pretrial writ, violating Mr. Ayo’s Sixth and Fourteenth Amendment Constitutional Right(s).
 
 [8]
 

 |2r,In this assignment of error, the defendant states that he wrote numerous letters to his attorney regarding preparation of his defense.
 

 It is fundamental that a criminal defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution. To establish ineffective assistance of counsel, a defendant must prove both that 1) his attorney’s performance was deficient, and 2) he was prejudiced by the deficiency.
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 

 A claim for ineffective assistance of counsel is most typically and efficiently addressed in an application for post-conviction relief, where a full evidentiary hearing can be conducted, rather than on direct appeal.
 
 State v. McIntyre,
 
 97-876 (La.App. 5 Cir. 1/27/98), 708 So.2d 1071, 1075,
 
 writ denied,
 
 98-1032 (La.9/18/98), 724 So.2d 753.
 

 The defendant raises complaints regarding preparation and the choice of defense witnesses. In particular, he asserts that counsel failed to locate and subpoena his potential defense witness, Theo Brickley.
 

 The record does not support the allegation. Defense counsel noted on the record that he attempted to serve Theo Brickley for trial but was unsuccessful. (Vol. 2, p. 336, 339). The defense had an instanter subpoena issued for this witness but there was no return on the subpoena. More importantly, defense counsel informed the defendant at trial that he was entitled to a continuance should Brickley not be available for trial. The defendant on the record informed the court that he did not want a continuance but wanted to proceed to trial even without the witness. Accordingly, this assignment of error has no merit.
 

 \ ?1PRO SE ASSIGNMENT OF ERROR NUMBER NINE
 

 Trial Court erred by failing to grant a mistrial when the State committed fundamental error and “perjury” by fraudulently informing jury that Mr. Ayo is wanted
 
 *103
 
 for a parole violation, when Mr. Ayo has (never) been on parole, violating his Sixth and Fourteenth Amendment Constitutional Right(s).
 

 The majority of issues raised in this pro se assignment of error have been discussed in connection with the second counseled claim.
 

 The defendant makes a new factual claim: that his trial transcript has been altered. A criminal defendant has a right to a complete transcript of trial proceedings. LSA-Const. Art. 1, § 19. The law provides that in criminal cases tried in the judicial districts, the official court reporter shall record all portions of the proceedings required by law or the court and shall, when required by law or the court, transcribe those portions of the proceedings required, which shall be filed with the clerk of court in the parish where the case is being tried. LSA-R.S. 13:961.
 

 Each volume of the transcript in this ease bears the certification of the court reporter that a true and correct transcript of proceedings has been made. Despite these official attestations, the defendant states that his trial transcripts have been altered and that the alterations reveal perjury and ineffective assistance of his counsel. In his brief, he quotes passages which he contends are the true version of events.
 

 By order of this Court, John H. Andres-sen, Deputy Judicial Administrator and Chief Court Reporter of the Twenty-fourth Judicial District, listened to the relevant portion of the transcript. He has provided a written statement to this Court that he listened to the entire cross-examination of the defendant and “determined that there are no parts of the transcript missing or altered.” This assignment of error has no merit.
 

 \9xPIiO se assignment of error NUMBER TEN
 

 Trial court erred by admitting evidence agreed upon in pretrial not to introduce, violating Mr. Ayo’s Sixth and Fourteen Amendment Constitutional Right(s) to a fair trial.
 

 It is undisputed that after the robbery the defendant wrote a letter to the cab driver, William Barrett. It is also undisputed that the state, in possession of the letter, provided a copy to the defense before trial. In this letter, the defendant stated that he armed himself with a knife before getting into the cab because he was afraid of a “psycho patient [sic] contractor” who was outside.
 

 The defendant argues that the prosecutor promised prior to trial not to introduce his letter into evidence. He further contends that the state breached this agreement and questioned him regarding his letter. He concludes that the introduction of his letter to Mr. Barrett was so prejudicial as to warrant the granting of a new trial.
 

 The state cross-examined the defendant on his letter to the cab driver. Defense counsel objected and informed the court that he had received copies from the state of letters the defendant wrote. Counsel also stated that he had been promised that the state would not use the letters at trial. The assistant district attorney replied that she had promised counsel not to use the letters during her case-in-chief but she denied promising not to use the letter to impeach the defendant. The trial judge allowed the prosecutor to cross-examine the defendant on his letter and allowed it to be admitted as state’s exhibit 21.
 

 In a bench conference, the state indicated that it wished to offer this letter into evidence. The defense objected but the court admitted the letter into evidence as State’s Exhibit 21. The trial court was faced with contradictory accounts of an agreement between counsel. Under the circumstance, the trial court’s ruling was not an abuse of discretion.
 

 
 *104
 
 ^Furthermore, the trial court’s ruling was supported by evidence law. Relevant evidence is “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” LSA-C.E. art. 401. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. LSA-C.E. art. 403.
 

 Evidence may also be admitted for impeachment purposes. Impeachment evidence is that which affects the credibility of a witness.
 
 Giglio v. United States,
 
 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). An example, present in this case, of impeachment evidence is a prior inconsistent statement by the testifying witness. Defendant testified that he secured the knife to use for work stripping copper. What he wrote in the letter contradicts his trial testimony. Absent a clear abuse of discretion, a trial court’s ruling on the admissibility of evidence will not be overturned on appeal.
 

 The defendant’s argument to this Court does not establish that the trial court abused its wide discretion in admitting the defendant’s letter into evidence. This assignment of error has no merit
 

 PRO SE ASSIGNMENT OF ERROR NUMBER ELEVEN
 

 Trial court erred in not intervening and properly govern proceedings, stopping State’s repeated improprieties denying Mr. Ayo’s right to a fair and impartial trial, violating his Sixth and Fourteenth Amendment Constitutional Right(s).
 

 In his final assignment of error, the defendant contends that thirty-three errors infected his trial and that these were not harmless.
 

 The combined effect of assignments of error, none of which warrant reversal on its own, does not deprive a defendant of his right to a constitutionally fair trial. State
 
 v. Rochon,
 
 98-717, p. 14 (La.App. 5 Cir. 3/10/99), 733 So.2d 624, 633. The Supreme Court has noted that the “cumulative error” doctrine has lost favor in the Louisiana courts.
 
 State v. Draughn,
 
 05-1825, p. 70 (La.1/17/07), 950 So.2d 583, 629. Significantly, the Supreme Court in
 
 State v. Manning,
 
 03-1982 (La.10/19/04), 885 So.2d 1044, quoted with approval
 
 Mullen v. Blackburn,
 
 808 F.2d 1143, 1147 (5th Cir.1987), where the federal Fifth Circuit rejected the cumulative error doctrine by noting that “twenty times zero equals zero.”
 

 This assignment of error has no merit.
 

 ERROR PATENT DISCUSSION
 

 The record was reviewed for errors patent, as required by LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). The review of the record reveals no errors patent in this case.
 

 PRO SE WRIT NO. 08-KH-U79
 

 In a pro se writ application, the defendant also challenges his misdemeanor conviction for resisting arrest, a violation of LSA-R.S. 14:108. This Court consolidated the actions on January 15, 2009.
 

 Defendant argues that the “Trial Court committed fundamental error by finding police “not” in close nor hot pursuit of person to be arrested, may enter another jurisdiction and forcibly conduct “investigatory” stop/detention of any citizen on whim, and that Mr. Ayo inherently vests no right to resist such an illegal arrest/detention, in violation of Mr. Ayo’s Fourth, Fifth, Sixth, and Fourteenth Amendment Constitutional Right(s).”
 

 LSA-R.S. 14:108 states, in pertinent part:
 

 |,¾§ 108. Resisting an officer
 

 A. Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an indi
 
 *105
 
 vidual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity.
 

 In this challenge to his misdemeanor conviction, the defendant reiterates legal arguments made in his challenge to his felony conviction. The merits of this assignment of error have been addressed at length in connection with the issues raised in pro se assignments of error one, two, four, and five. For the reasons noted above, his assignment of error has no merit.
 

 Accordingly, the defendant’s convictions are affirmed.
 

 AFFIRMED.
 

 . In addition to eleven assignments of error, this pro se brief contains thirty-three italicized headings, all mentioning legal concepts. It is not clear how these headings relate to the assignments of error but it is clear that these headings are not briefed. The brief must contain "a specification or assignment of alleged errors relied upon, the issues presented for review, an argument confined strictly to the issues of the case, ... giving accurate citations of the pages of the record and die authorities cited[.]” Rule 2-12.4, Uniform Rules, Courts of Appeal. Assignments of error neither briefed nor argued are considered abandoned on appeal.
 
 State v. Blank,
 
 01-564 (La.App. 5 Cir. 11/27/01), 804 So.2d 132, 139.
 

 [1]
 

 . Because the violation of LSA-R.S. 14:108 is a misdemeanor, Mr. Ayo filed a writ application in this court for review of that conviction. The writ application and this appeal have been consolidated for review and opinion.
 

 [2]
 

 . Mr. DeBroy was very specific that he was carrying a $20 dollar bill, a $5 dollar bill, and three $ 1 dollar bills, as was his custom.
 

 [3]
 

 . For logical discussion, these claims are taken out of the order presented in the defendant’s brief.
 

 [5]
 

 . "Close pursuit” does not require that police lights or sirens be used, nor does it require a high rate of speed. As noted by other courts reviewing this issue, "pursuit does not imply a fender-smashing Hollywood style chase scene, it does connote something more than mere casual following.”
 
 City of Wenatchee v. Durham,
 
 43 Wash.App. 547, 552, 718 P.2d 819 (Div. 3 1986). Similarly, a pursuit into another jurisdiction was upheld where the police stayed within the 45 mile an hour speed limit and did not activate sirens or flashing lights. The court observed that the critical elements characterizing hot pursuit are the continuity and immediacy of the pursuit, rather than merely the rate of speed at which pursuit is made.
 
 Poss v. State,
 
 167 Ga.App. 86, 87, 305 S.E.2d 884 (Ga.App.1983).
 

 [6]
 

 .
 
 In his brief, the defendant references pages 131-146 of the record. This portion of the transcript reflects two brief hearings on the defendant's petition for habeas corpus. Neither hearing contains testimony from witnesses.
 

 [7]
 

 . For his proposition that seventy-two percent of the jury voted for conviction based on the positive identification, the defendant mistakenly relies on Expert Testimony on Eyewitness Identification: A New Pair of Glasses for the Jury, 32 Am.Crim. Law. 1013, 1023. This article addresses issues not before this Court and furthermore, the article does not support the defendants claim.
 

 [8]
 

 . he defendant, in initially listing his assignments of error, includes the language relating to the court not continuing the trial. When the assignment is listed in his brief, it does not contain any reference or discussion on the question of continuing the trial. The defendant, in the body of his brief, assigns as error the following: "Trial Court erred by 'not' addressing multiple ineffective assistance of counsel claim(s) in pretrial writ, violation Mr. Ayo's Sixth and Fourteenth Amendment Constitutional Right(s).” As discussed above, under Rule 2-12.4, Uniform Rules, Courts of Appeal, assignments of error neither briefed nor argued are considered abandoned on appeal.
 

 It is also noteworthy that no written motion for continuance appears in the record and that the minute entries from each day of trial fail to reflect that a continuance was requested by the defendant. LSA-C.Cr.P. art. 841(A) provides that 'Ta]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.” The article also provides that "It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefore.”