LOLLEY, J.
| tThis criminal appeal arises from the First Judicial District Court, Parish of Caddo, State of Louisiana. The defendant, Demetrius Bradley, was convicted of two counts of armed robbery, violations of La. R.S. 14:64. He was adjudicated a second felony offender and sentenced to 57 years at hard labor, which he now appeals. For the following reasons, we affirm Bradley’s conviction and sentence.
Facts
This particular criminal defendant, a young man with promise and potential, makes this criminal case even more senseless than most crimes. Demetrius Bradley is a college-educated man in his mid-thirties, whose father is a pastor at a local church. As the assistant district attorney stated at Bradley’s habitual offender hearing:
Bradley has had substantial resources and a substantial background to do the right thing in his life and he has chosen time and time again to not only commit crimes and not do the right thing, but his crimes are escalating and his crimes are putting people here and victims here in Caddo Parish at risk for violence and death.
At approximately midnight on May 7, 2004, a group of three or four men entered the Thrifty Liquor Store on Linwood Avenue in Shreveport. The men were all dressed in black and wore masks and gloves; however, the victims were able to identify the perpetrators as black males. The men, armed with a variety of firearms, forced the store employees, a customer and an unarmed security guard onto the floor. The perpetrators removed James Carter’s wallet from his pants and took $40.00. Carter opened the registers after being ordered to do so by one of the men and the money was removed from three registers. Vincent Pleasant, the unarmed security guard, was 1 ^forced to the floor and robbed of $188.00. One of the men remained at the door and called to the others to hurry up. After taking these valuables, the men fled the store and got into a white SUV.
Following an anonymous tip, Officers Keith Sharrah and Trey Robinson, two Shreveport Police officers who were nearby involved in a traffic stop, responded immediately. The officers pursued the SUV in a chase captured on their patrol car dash cameras. The driver wrecked the SUV and a foot chase ensued. During the pursuit, the robbers discarded several masks, items of clothing, gloves and weapons. One of the robbers pointed his weapon in the direction of the officers, and the officers fired back. Additional officers responded to the scene and established a perimeter. A K-9 unit pursued one of the fleeing robbers who was bitten twice by the dog-the robber managed to escape. None of the perpetrators were apprehended at that time. Four guns, dark clothing, masks and gloves were recovered from the scene of the foot chase. All of the evidence was turned over to the North Louisiana Crime Lab for analysis.
Following an investigation, the police determined that Bradley and two other individuals were involved in the armed robbery. Bradley was arrested and charged with three counts of armed robbery of Theresa York, James Carter and Vincent Pleasant. A bench trial commenced, following which Bradley was convicted of two counts of armed robbery.
Subsequently, there was a hearing to address the multiple offender bill. At that time, the trial court denied Bradley’s motion for a new trial and J.N.O.V. On that same date, Bradley stipulated to be the *934 same person who |3was previously convicted in 2002 pursuant to a plea on conspiracy to commit first degree murder.[1] He also stipulated that the plea colloquy was sufficient and contained all Boykin rights. After a hearing, Bradley was adjudicated a second felony offender.
At the sentencing hearing, the trial court noted that, in light of the second felony habitual offender resolution, Bradley was subject to a minimum sentence of 54½ years at hard labor without benefits and a possible maximum sentence of 198 years at hard labor without benefits. The trial court held that the facts did not justify a downward departure from the minimum sentence. After noting the mitigating and aggravating circumstances, Bradley was sentenced to 57 years at hard labor without the benefit of probation, parole, or suspension of sentence. This appeal followed.
Discussion
On appeal, Bradley raises three assignments of error, all related to the evidence used to convict him. In his first assignment of error, Bradley argues that the trial court erred in refusing to suppress evidence gained during the execution of a federal search warrant. Bradley submits that the trial court erred in admitting evidence obtained during the execution of a federal search warrant of storage units used by Bradley, where investigators observed a photograph of an owner’s manual for a two-way radio located inside Bradley’s storage unit. Specifically, a federal search warrant was obtained on Bradley’s storage unit in connection with an investigation | ¿involving Bradley for a different crime in which he may have been involved. Sergeant Chuck Andrews, of the Shreveport Police Department, helped the federal agents execute the warrant. Bradley claims that Sgt. Andrews improperly assisted in the execution of the warrant and that the evidence obtained was tainted and therefore improperly admitted. Bradley further asserts that Sgt. Andrews’ purpose was to look for evidence from the armed robbery and that the record is clear that he could not have obtained a search warrant to the storage unit for that purpose.
The Fourth Amendment of the United States Constitution provides that “... no warrants shall issue, but upon probable cause supported by oath or affirmation.” Louisiana law has the same threshold requirements. La. Const, art. 1, § 5; La. C. Cr. P. art. 162.
Louisiana C. Cr. P. art. 161 provides:
Except as authorized by Article 163.1, a judge may issue a warrant authorizing the search for and seizure of any thing within the territorial jurisdiction of the court which:
(1) Has been the subject of theft.
(2) Is intended for use or has been used as a means of committing an offense.
(3) May constitute evidence tending to prove the commission of an offense.
Louisiana C. Cr. P. art. 162 provides in pertinent part that
A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.
, A Search warrant shall particularly describe the person or place to be searched, the persons or things to be *935 seized, and the lawful purpose or reason for the search or seizure.
| ¡^Louisiana C. Cr. P. art. 165 provides:
While in the course of executing a search warrant, a peace officer may make photographs, lift fingerprints, seize things whether or not described in the warrant that may constitute evidence tending to prove the commission of any offense, and perform all other acts pursuant to his duties.
The U.S. Supreme Court has held that the judicially created exclusionary rule is subject to a good faith exception. However, Bradley does not allege that the warrant was defective nor does he allege that its issuance lacked probable cause. Instead, Bradley complains that Sgt. Andrews did not have a right to be in the protected area and as such, any evidence obtained by him is fruit of the poisonous tree and should be excluded from evidence.
Sergeant Andrews testified that he was the lead investigator of the armed robbery and as a result of the investigation, Bradley was developed as a suspect. Sergeant Andrews contacted the FBI, which was investigating Bradley for another crime, for their investigative resources and assistance in this matter. As a result of this collaboration, Sgt. Andrews accompanied the federal agents in their execution of a federal search warrant on storage units used by Bradley. While in the storage unit, Sgt. Andrews observed a manual for a two-way radio, similar to the two-way radio found in the getaway car immediately following the armed robbery.
Sergeant Andrews photographed the manual and the photograph was introduced into evidence. However, Bradley argues that Sgt. Andrews did not have the right to be present during the execution of the search warrant and therefore the photograph of the manual was erroneously seized and | (¡should not have been admitted into evidence. We believe that Sgt. Andrews did have a right to be there as he was working with the federal agents on the case. Moreover, Bradley offers no law prohibiting Sgt. Andrews from being present.
The warrant allowed the officers to be lawfully inside the storage unit. While inside, the manual was observed by Sgt. Andrews in plain view, a recognized exception to the warrant requirement. It is well established that evidence in the open or plain view of a police officer who is legally on the premises from which he obtains the view is subject to seizure without a warrant. Harris v. United States, 390 U.S. 284, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); State v. Brand, 357 So.2d 545 (La.1978); State v. Shed, 36,321 (La.App.2d Cir.09/18/02), 828 So.2d 124, writ denied, 2002-3123 (La.12/19/03), 861 So.2d 561.
Regardless, even if Sgt. Andrews had no right to be present during the execution of the warrant, the assignment can be dismissed under harmless error analysis. During cross-examination, Sgt. Andrews admitted that there was no way to connect the manual to the two-way radio found in the getaway vehicle. Moreover, the trial court, in its reasons for judgment did not allude to the manual as bearing on its decision. The exclusion of the photograph from the evidence would not affect the body of evidence that otherwise supports Bradley’s conviction. The photo did not lead to DNA evidence nor did it lead to Bradley’s statements to the police. It is this evidence on which the trial court relied on in reaching the verdict. We conclude that this assignment of error is without merit.
|7In his second assignment of error, Bradley submits that the trial court erred in refusing to suppress the results of DNA *936 sampling on an illegally obtained buccal swab and that the DNA evidence relating to the buccal swab was erroneously admitted. Bradley acknowledges that he consented to the swab, but argues the constitutionality of the blood test. Both the blood test and the buccal swab were taken within minutes of each other. According to Bradley, because the blood test violated his constitutional rights, the subsequent buccal swab, although consented to, also violated his rights absent a showing of “some intervening event purging the taint.” Alternatively, he argues that irrespective of the constitutionality of the blood test, Bradley did not freely and voluntarily consent to the buccal swab.
It is undisputed that the collection of a saliva sample for DNA analysis is a search requiring a warrant implicating the Fourth Amendment. State v. Lee, 2005-2098 (La.01/16/08), 976 So.2d 109, cert. denied, - U.S. -, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008).
Louisiana R.S. 15:609 provides in pertinent part as follows:
A. (1) A person who is arrested for a felony or other specified offense, including an attempt, conspiracy, criminal solicitation, or accessory after the fact of such offenses on or after September 1, 1999, shall have a DNA sample drawn or taken at the same time he is fingerprinted pursuant to the booking procedure.
B. (1) Any person who is convicted or enters into a plea agreement resulting in a conviction on or after September 1, 1999, for a felony or other specified offense, including an attempt, conspiracy, criminal solicitation, or accessory after the fact for such offenses committed prior to that date shall have a DNA sample drawn or taken as follows:
|8(a) A person who is sentenced to a term of confinement for an offense covered by this Chapter shall have a DNA sample drawn or taken upon intake to a prison, jail, or any other detention facility or institution. If the person is already confined at the time of sentencing, the person shall have a DNA sample drawn or taken immediately after the sentencing.
(b) A person who is convicted or enters into a plea agreement resulting in a conviction for an offense covered by this Chapter shall have a DNA sample drawn or taken as a condition of any sentence that will not involve an intake into a prison, jail, or any other detention facility or institution.
(c) Under no circumstances shall a person who is convicted or enters into a plea agreement resulting in a conviction for an offense covered by this Chapter be released in any manner after such disposition unless and until a DNA sample has been withdrawn or taken.
In 1997, Bradley was arrested for a felony offense and in July, 2002, he was convicted of that offense pursuant to a guilty plea of conspiracy to commit first degree murder. The Department of Corrections paroled him on June 24, 2003, when Bradley came under the supervision of his parole officer, Leonard Pierce.
On November 14, 2004, two federal agents approached Agent Pierce to determine whether Bradley’s DNA was on file in the state’s database. Upon learning that it was not, Agent Pierce contacted Bradley and requested he come into his office. Bradley’s blood sample was taken by Agent Pierce in accordance with La. R.S. 15:609 and departmental policy. Bradley was told that he had to submit to the blood test in accordance with his parole conditions. Subsequently, Agent Pierce was asked to perform a buccal swab (saliva sample) on Bradley. Agent Pierce *937 asked Bradley for his consent, which Bradley gave. In fact, he was asked a second time, and he | ^affirmatively responded again. It was the buccal swab that was used in the analysis by Mary Dukes which connected Bradley to the robbery.
Louisiana R.S. 15:609 originally provided that DNA was to be taken for those convicted only of felony sexual offenses. This was the law in effect at the time of Bradley’s conviction. However, three days prior to his being paroled, a new law went into effect which required that a person who “enters into a plea agreement resulting in a conviction on or after September 1, 2009 for ... conspiracy [for a felony offense] ... committed prior to that date shall have a DNA sample drawn.” Although the act does not precisely indicate whether it should be given effect at the time of defendant’s conviction (July 15, 2002) or at the time of his release on parole (June 24, 2003), we believe that the law in effect on the date of release controls in light of La. R.S. 15:609 B(l)(c), which provides:
Under no circumstances shall a person who is convicted or enters into a plea agreement resulting in a conviction for an offense covered by this Chapter be released in any manner after such disposition unless and until a DNA sample has been withdrawn or taken.
We base our belief on two factors under the statute: first, the date of release is the time by which the DNA sample must be obtained, and, second, it is also the interpretation that best comports with the policy behind the law which is legislatively embodied in La. R.S. 15:609.
Here, Agent Pierce’s action in requiring the blood sample was reasonably based on the wording of La. R.S. 15:609, at the time of Bradley’s parole in 2003, i.e., that all felony convicts have to provide a DNA sample before being released on parole. Therefore, we conclude that | ,0the blood test did not violate Bradley’s constitutional rights and was performed in compliance with La. R.S. 15:609.
As for the buccal swab, Bradley consented to the test which is a valid exception to the warrant requirement. A warrantless search and seizure is presumed unreasonable unless it is justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Talbert, 449 So.2d 446 (La.1984); State v. Howard, 37,580 (La.App.2d Cir.09/24/03), 855 So.2d 881. A valid consent search is a well-recognized exception to the warrant requirement, but the burden is upon the state to prove that the consent was given freely and voluntarily. State v. Howard, supra. An oral consent to a search is valid. Id.
Voluntariness is a question of fact to be determined by the trial judge under the facts and circumstances of each ease. These factual determinations are to be given great weight on appellate review. State v. Edwards, 434 So.2d 395 (La.1983); State v. Durr, 28,197 (La.App.2d Cir.06/26/96), 677 So.2d 596.
Bradley incorrectly asserts that he was threatened by his parole officer with revocation for failure to submit to DNA testing. We note that Bradley does not identify whether he is referring to the blood test or the buccal swab test. Instead he argues that because the blood test was performed in derogation of his constitutional rights, the buccal swab constituted fruit of the poisonous tree and should therefore be excluded. However, because the blood test was administered in compliance with La. R.S. 15:609, that argument is without merit. Moreover, Bradley consented |ntwice to the administration of the buccal swab and therefore this assignment is without merit.
*938 Finally, Bradley argues that generally there was insufficient evidence to convict him of the armed robbery of the Thrifty Liquor store. We disagree.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Murray, 36, 137 (La.App.2d Cir.08/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.09/05/03) 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.02/22/06), 922 So.2d 517. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 1994-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to the factfinder’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.08/30/02), 827 So.2d 508, writ denied, 2002-3090 (La.11/14/03), 858 So.2d 422.
JjThe trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 1999-0023 (La.01/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840,121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
Armed robbery is the taking of anything of value from the person of another or from the area within that person’s immediate control by use of force or intimidation while armed with a dangerous weapon. La. R.S. 14:64. James Carter and Vincent Pleasant each testified that armed men using force and threats robbed them of cash from their persons. The suspects were followed in a vehicle chase as they attempted to flee the scene. The chase continued on foot but did not result in the apprehension of any suspects. From the scene of the foot chase, items of clothing were recovered matching the description of those worn by the robbers. Those items were properly placed into evidence and sent to the North Louisiana Crime Lab for DNA testing. Mary Dukes, a forensic DNA analyst, performed the testing on the items recovered from the scene. According to Dukes, the DNA obtained from two recovered gloves matched that of Bradley. The DNA testing resulted in a match of one in 89.5 trillion.
After being Mirandized, Bradley made the following two statements to police indicating an intimate knowledge of the details of the armed robbery: (1) he suggested that one of the codefendants, a college basketball player, was the robber that had been bitten by the K-9 unit on the night of [ igthe robbery; and (2) he told police that he could give them “Jarmin Wynn,” a name that the police had not mentioned to Bradley but who was considered a person of interest. Bradley also admitted that he had given gloves and masks to “some boys” just prior to the robbery because he feared that having them in his possession might violate his parole. Bradley told police that he picked up Corey Holder and Jerrod Johnson on the night of May 7, 2004, at Mansfield Road and Jewella and both men were out of breath and sweaty when he picked them up.
*939 A review of the evidence presented at trial, viewed under the Jackson standard, is sufficient to support all of the elements of both convictions as set forth herein. As stated, the appellate court does not assess the credibility of witnesses or reweigh evidence, and a reviewing court accords great deference to a factfinder’s decision to accept or reject the testimony of a witness in whole or in part. Bradley’s statements to police and the DNA evidence were the reasons cited by the trial court for its decision. When this evidence is viewed in the light most favorable to the prosecution, any rational trier of fact would easily conclude that the defendant committed the two counts of armed robbery. Because the record is void of internal contradiction or irreconcilable conflict with physical evidence, the testimony of state witnesses, obviously believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Wiltcher, 41,981 (La.App.2d Cir.05/09/07), 956 So.2d 769. Accordingly, we conclude that this assignment is without merit.
| ^Conclusion
For the foregoing reasons, the conviction and sentence of Demetrius Bradley are affirmed.
AFFIRMED.

. Bradley supplied the handgun which resulted in the shooting death of his ex-wife, Monica.