WALTER J. ROTHSCHILD, Judge.
On March 30, 2006, defendant, Humberto Vargas, was indicted by a Jefferson Parish grand jury with aggravated rape (Count I), in violation of LSA-R.S.14:42, and aggravated burglary (Count II), in violation of LSA-R.S. 14:60. Defendant pled not guilty at arraignment. On the trial court’s own motion, a preliminary hearing was held on October 19, 2006, and continued to February 1, 2007.[1] On February 1, 2007, the trial court decided not to continue forward with the preliminary exam and found that there was probable cause to proceed to trial.
After a hearing on defense counsel’s application to appoint a sanity commission, the trial court deemed defendant competent to stand trial. Trial commenced on December 15, 2008, and jury selection began. On that same date, |aprior to jury selection, defense counsel orally moved the trial court to quash the indictment arguing that the two-year time limit for the institution for prosecution had expired. The trial court immediately denied defendant’s motion to quash asserting that part of the reason for the delay was due to defense counsel’s request for continuances in order to obtain evidence taken from defendant in Miami, where defendant was arrested.
On December 16, 2008, after opening arguments, Count I of the bill of indictment was amended, in accordance with a *32 plea agreement, to allege a violation of LSA-R.S. 14:42.1, forcible rape. At that time, defendant withdrew the not guilty plea and pled guilty as charged. On the same day, defendant was sentenced to twenty years with the Department of Corrections on Counts I (as amended) and II, to run concurrently with each other and with a six month misdemeanor sentence in case number 05-5130, to which defendant also pled guilty.
The defendant filed an application for post-conviction relief on December 28, 2009. The trial court dismissed defendant’s application while granting his request for an out-of-time appeal on January 8, 2010. This out-of-time appeal follows.

FACTS

As this matter did not proceed to trial, the pertinent facts were deduced from the direct examination of the victim at the preliminary examination hearing held on October 19, 2006. At that time, the victim stated that she met defendant at a party sometime in February of 2005, and they dated for about two and a half months. Shortly after they started dating, defendant began to ask the victim to marry him to which she responded maybe. However, the victim ended the relationship because she felt he was not a suitable partner.
|4The victim explained that the defendant would follow her around and “always impulse his presence” even when she wanted to be alone. She further testified that when she ended the relationship, she told him that she wanted nothing more to do with him to which defendant responded “no, no” because he wanted to marry her on May 26, 2005, which was her birthday. The victim again instructed the defendant that the relationship was over because he continued to contact her at work and “he would talk bad about her and say that she was a bad person.”[2]
After the victim ended the relationship, defendant would continue to contact her. He brought her flowers to work to get her to change her mind. Additionally, he would call her at work, home, as well as on her cell phone, where he would leave numerous harassing messages. She then expressed that defendant would leave messages on her phone calling her a “disgraceful bitch, not worth anything.” When the victim asked defendant to stop calling her, he ignored her requests and continued to call.
Initially, the victim did not call the police about the harassment. However, she did call the police in May of 2005, when the defendant met her unannounced at the airport where the victim was returning from visiting her mother in Guatemala. She did not notify defendant of her travel plans; however, the departure and return dates were written down in her calendar at home. The defendant broke into her house and retrieved the information. When the victim returned home, she found her bathroom on the second floor dirty and the victim’s neighbor informed the victim that she heard noises in the apartment but she was afraid to enter.
At the airport, the defendant began “accosting” the victim: pulling her arm, insulting her, telling her she was “disgraceful”, and that she had to leave with him because he needed to speak with her. Security personnel noticed the situation, 1 .^escorted the victim safely to her brother, who picked her up, and instructed her to call the police.
When the victim arrived at home, she observed the defendant driving around her block. She called the police, and her neighbor, Maria Paniaqua, assisted her in *33 explaining the incident to the police because she did not speak English well enough. When the policemen arrived on the scene, the defendant was not in the area; however, he started calling her on the phone instead. At that time, the police officers instructed the victim to change her locks and to call again if she saw defendant near or if he began to harass her again.
On a separate occasion, also in May of 2005, the victim’s friend and neighbor, Maria Paniaqua, called the police because the defendant chased the victim in her vehicle. When the victim was leaving work, she observed defendant in his vehicle at the corner near a Taco Bell. The defendant chased behind the victim in his vehicle and she became very nervous. She drove around the back of her house where defendant hit her vehicle. The victim called Ms. Paniaqua, who came outside. As the victim turned the corner, the defendant hit her vehicle for a second time. The defendant then began banging on the windows of her vehicle while he was saying that she was “disgraceful, bewitched, [and] that he was going to kill [her].”
When Ms. Paniaqua called the police, the defendant left. One of the policemen who arrived on the scene was the same officer who was called out the first time victim called the police. This officer called defendant on his cell phone and told him that he needed to stop following the victim, and that he wanted to talk to the defendant. The defendant told the police officer that he had done nothing. |fiThe police officers took pictures of the damage to the victim’s car and left the scene.
The defendant continued to harass the victim. Specifically, he threw rocks at her windows and her eight-year-old daughter got so scared she started crying and hid underneath the table. The victim testified that she did not call the police because the young men in the neighborhood vowed to protect her. The defendant would call her and accuse her of having sexual relationships with the men and that was the reason why they were protecting her. On that particular day, one of the young men came outside and defendant left. The victim further testified that defendant continued to watch her and he would let her know he was watching her by calling and telling her who she was talking to on the phone or what she was doing at that particular time.
On June 2, 2005, the victim was working at Maria’s Hair Salon, in Metairie, and defendant called her at work at around 11:00 a.m. The victim’s co-worker told defendant that she was not there so he hung up and called back around 1:00 p.m. The victim’s co-worker again told defendant that she was not there, but included that she would come back because she left her car there, reasoning that defendant may have been outside watching the victim. The victim left the salon at approximately 3:40 p.m.
The victim went straight home because she was afraid of defendant following her. When she got home she locked her doors with double locks also using the chain. When she turned around, she observed defendant in the middle of her kitchen so she asked him what he was doing there. Defendant grabbed the victim by her hair and began insulting her and hitting her. The victim started screaming knowing the owner of the apartment was there, because her neighbor, Ms. Paniaqua, moved out. Defendant then turned on the television very loudly so 17that no one could hear the altercation. Defendant then put a pillow over the victim’s face to choke her as he said: “Die you disgraceful woman, die.”
The defendant began to drag the victim to the second floor, the victim refused, so he then attempted to lock her in the first floor bathroom. The victim struggled with *34 the defendant as he continued to hit her. He then told her to take her clothes off to which she said “no.” The defendant then pulled out a knife from the back of his pants and told the victim that he was going to kill her and disfigure her face.
Next, defendant took the victim into the kitchen, threw her on the floor, and ripped her clothes off. Defendant bit the victim on the vagina, opened his pants, and began to sexually assault her. He told her not to move or make a sound or he would kill her. Defendant was interrupted when the victim’s son and ex-husband knocked on her door. The victim convinced defendant to let her answer the door to give her son a key, promising that she would return to him in the kitchen. She put her clothes on, opened all of the locks and started yelling that defendant wanted to kill her. The defendant left the knife on the kitchen counter and ran out the back door, hopping over the fence. The victim’s ex-husband observed him and chased him to no avail. Defendant stole her passport, green card, pictures, jewelry, and money. The victim’s ex-husband called the police and after they arrived, defendant started calling the victim again. One of the policemen talked to defendant and told him to give himself up to which defendant replied that he did not do anything to the victim.
According to the police reports, defendant contacted a friend who drove him to Miami, Florida. Defendant was arrested in Miami when the police there learned of the warrant in Jefferson Parish. Defendant was extradited from Miami to Jefferson Parish. After defendant was arrested, he continued to call the victim and 18he also wrote her a letter. He asked the victim for her forgiveness for what he did, explaining that he had already asked God to forgive him.

ANDERS BRIEF

Under the procedure set forth in State v. Benjamin, 573 So.2d 528, 530 (La.App. 4 Cir.1990),[3] appointed appellant counsel has filed an Anders brief pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and State v. Jyles, 96-2669, p. 3 (La.12/12/97), 704 So.2d 241, 242 (per curiam), asserting that she has thoroughly reviewed the trial court record and cannot find any non-frivolous issues to raise on appeal. Accordingly, appointed counsel requests to withdraw as counsel of record.

DISCUSSION

In Anders, the United States Supreme Court stated that appointed appellate counsel may request permission to withdraw if she finds her case to be wholly frivolous after a conscientious examination of it.[4] The request must be accompanied by ‘“a brief referring to anything in the record that might arguably support the appeal’ ” so as to provide the reviewing court “with a basis for determining whether appointed counsel have fully performed their duty to support their clients’ appeals to the best of their ability” and to assist the reviewing court “in making the critical determination whether the appeal is indeed so frivolous that counsel should be permitted to withdraw.” McCoy v. Court of Appeals of Wisconsin, Dist. 1, 486 U.S. 429, 439, 108 S.Ct. 1895, 1902, 100 L.Ed.2d 440 (1988).
*35 In State v. Jyles, 96-2669 at 2, 704 So.2d at 241, the Louisiana Supreme Court stated that an Anders brief need not tediously catalog every meritless pretrial motion or objection made at trial with a detailed explanation of why the motions or objections lack merit. The supreme court explained that an Anders brief must demonstrate by full discussion and analysis that appellate counsel “has cast an advocate’s eye over the trial record and considered whether any ruling made by the trial court, subject to the contemporaneous objection rule, had á significant, adverse impact on shaping the evidence presented to the jury for its consideration.” State v. Jyles, supra.
When conducting a review for compliance with Anders, an appellate court must conduct an independent review of the record to determine whether the appeal is wholly frivolous. State v. Bradford, 95-929, p. 4 (La.App. 5 Cir. 6/25/96), 676 So.2d 1108, 1110. If, after an independent review, the reviewing court determines there are no non-frivolous issues for appeal, it may grant counsel’s motion to withdraw and affirm the defendant’s conviction and sentence. However, if the court finds any legal point arguable on the merits, it may either deny the motion and order the court-appointed attorney to file a brief arguing the legal point(s) identified by the court, or grant the motion and appoint substitute appellate counsel. Id.
Defendant’s appellate counsel asserts that after a detailed review of the record, she could find no non-frivolous issues to raise on appeal. In her brief, appellate counsel notes that there is no ruling of the trial court to be challenged because the defendant pled guilty and it was not a Crosby[5] plea. Additionally, appellate counsel considered raising an issue regarding excessive sentence; however, she concluded that defendant was informed of his sentence in the guilty | mplea form, and the trial court informed defendant of his sentence in the plea colloquy. Moreover, the defendant understood that the State agreed not file a multiple offender bill and it also reduced Count I to forcible rape, in exchange for the plea. Appellate counsel noted that the sentencing range for the amended charge was 5-40 years for forcible rape; therefore, she concluded that the 20 year sentence was not constitutionally excessive.
The State agrees with appellate counsel and also submits that she has shown a conscientious and thorough review and recitation of the procedural history of the case. The State also noted that that appellate counsel properly noted that the defendant, when entering his guilty plea, did not preserve his right to appeal any adverse ruling through Crosby, supra. The State included that defendant initialed and signed an acknowledgement of constitutional rights and waived those rights, including the right to appeal. The State urged that this waiver of rights was again given orally in court. The State also mentioned that appellate counsel reviewed the sentence and concluded it was not excessive. Last, the State included that during sentencing, the defendant was made aware that he had two years to seek post-conviction relief.
Appellate counsel has filed a motion to withdraw as attorney of record which states she notified defendant of the filing of her motion and has advised defendant of his right to file a pro se brief in this appeal. Additionally, this Court sent defendant a letter by certified mail informing him that an Anders brief had been filed and that he had until November 11, 2010, *36 to file a pro se supplemental brief.[6] Defendant failed to file a brief in this matter.
An independent review of the record supports appellate counsel’s assertion that there are no non-frivolous issues to be raised on appeal. When an Anders brief |nis filed, the appellate court reviews: 1) the bill of information/indictment to insure the defendant was properly charged, 2) all minute entries to insure the defendant was present at all crucial stages of the proceedings, the jury composition and verdict were correct, and the sentence is legal, 3) all pleadings in the record, and 4) all transcripts to determine if any ruling provides an arguable basis for appeal. State v. Bradford, supra at 1110-1111.
In conducting this review, we fail to find any arguable basis for appeal. Defendant was properly charged by a grand jury indictment. Defendant was also present at all crucial stages of the proceedings. After trial commenced and opening arguments were complete, defendant waived his right to a jury trial and pled guilty. His guilty plea and sentence were part of a plea bargain. His 20-year concurrent sentences were legal as authorized by LSA-R.S. 14:42.1 and 14:60.[7] Moreover, a defendant cannot seek review of a sentence imposed in conformity with a plea agreement. LSA-C.Cr.P. art. 881.2(A)(2) and State v. Washington, 05-211, p. 5 (La.App. 5 Cir. 10/6/05), 916 So.2d 1171, 1173.
Additionally, a review of the pleadings and transcripts do not reveal any basis for appeal. However, two of the trial court’s rulings merit further review.
In reference to the first ruling, the record reflects that defendant was indicted on March 30, 2006, and that the preliminary examination was held on October 19, 2006. The hearing was continued on October 19, 2006, shortly after defense counsel began cross-examination of the victim. On February 1, 2007, when the matter was taken up again, the trial court would not allow defense counsel to finish his cross-examination, ruling that “the Court was not going to go forward with any preliminary examination in this case ... [because] it would serve no purpose and defendant would have his rights at trial. Defense counsel “strenuously” objected to 112the court’s ruling on the basis that they had a preliminary examination in which the State presented a witness and the defense was being deprived of the constitutional right to cross-examination. The court further ruled that it had no obligation to grant a preliminary exam, it did on its own motion, and it would deny both the State and defendant a request to pursue the preliminary examination. Ultimately, the trial court found probable cause to hold defendant over on the charges.
Upon review, we find that the constitutional argument raised by defendant at that time regarding the court’s ruling which prohibited defendant’s right to full cross-examination is meritless. This Court has held that the right to confrontation contained in the United States Constitution and the Louisiana Constitution is not implicated in a pre-trial matter. State v. Ayo, 08-468, p. 17 (La.App. 5 Cir. 3/24/09), 7 So.3d 85, 97, unit denied, 09-1026 (La.3/5/10), 28 So.3d 1006, (citing State v. Harris, 08-2117, p. 1 (La.App. 5 Cir. 12/19/08), 998 So.2d 55, 56).[8]
*37 Moreover, the issue was not preserved for appellate review. LSA-C.E. art. 103(A)(2) provides that in order to preserve the right to appeal a trial court ruling that excludes evidence, the defendant must make known the substance of the evidence to the trial court; therefore we find that defendant is precluded from raising this issue on appeal. Accordingly, we find that there was no violation of the defendant’s constitutional right to confrontation in this pre-trial matter.
Secondly, the defendant objected to the State introducing a consent search form, through which it obtained defendant’s DNA. Defendant argued that the consent obtained from defendant was accomplished well after his indictment and he was entitled to have counsel present, and the State obtaining consent to search 113from defendant without counsel was inappropriate. The trial court overruled defendant’s objection finding that defendant “volunteered to the sample” after being advised of his rights, knowing he could refuse and speak with his attorney.
It is undisputed that the collection of a saliva sample for DNA analysis is a search requiring a warrant implicating the Fourth Amendment. State v. Lee, 2005-2098 (La.01/16/08), 976 So.2d 109, cert. denied, 555 U.S. 824, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008). Therefore, the right to counsel does not apply.
As for the buccal swab[9], defendant consented to the test which is a valid exception to the warrant requirement. See State v. Bradley, 44,963, p. 10 (La.App. 2 Cir. 3/3/10), 33 So.3d 931, 937, writ denied, 10-1090 (La.12/10/10), 51 So.3d 723. A warrantless search and seizure is presumed unreasonable unless it is justified by one of the narrowly drawn exceptions to the warrant requirement. Id. (citing State v. Talbert, 449 So.2d 446 (La.1984); See also State v. Enclade, 03-353, p. 4 (La.App. 5 Cir. 9/16/03), 858 So.2d 8, 12; Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). A valid consent search is a well-recognized exception to the warrant requirement, but the burden is upon the state to prove that the consent was given freely and voluntarily. Id.; See also Enclade, 03-353 at 4, 858 So.2d at 13; (citing Schneckloth v. Bustamonte, supra; State v. Wilson, 467 So.2d 503 (La.1985), cert. denied, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985). An oral consent to a search is valid. Id.
Voluntariness is a question of fact to be determined by the trial judge under the facts and circumstances of each case. Bradley, 44,963 at 10, 33 So.3d at 937; State v. Carthan, 377 So.2d 308, 312(La.1979),(whether the defendant consented a fact to be determined by all of the facts and circumstances of the case; the trial judge’s conclusions on credibility are entitled to great weight)(citing Schneckloth v. Bustamonte, supra; State v. Dunbar, 356 So.2d 956 (La.1978); State v. Tennant, 352 So.2d 629 (La.1977), cert. denied, 435 U.S. 945, 98 S.Ct. 1529, 55 *38 L.Ed.2d 543 (1978); State v. Schouest, 351 So.2d 462 (La.1977); State v. Temple, 343 So.2d 1024 (La.1977). These factual determinations are to be given great weight on appellate review. Id. (citing State v. Edwards, 434 So.2d 395 (La.1983); Carthan, supra.
In the instant case the defendant underwent a procedure by which his mouth was swabbed in order to obtain DNA evidence against him. Based on the record, we find that the trial judge did not err in ruling that defendant consented to the search, which is a recognized exception to the warrant requirement. Further, it is noted that defense counsel agreed to stipulate to the lab report regarding the DNA analysis admitting that the victim’s DNA may be present on the victim and that this was not a material issue in the case.
Additionally, as both appellate counsel and the State correctly pointed out, that defendant did not plead guilty reserving his right under Crosby.[10] Moreover, neither appellate counsel nor the defendant brings up issues on appeal regarding any of the trial court’s rulings. Therefore, we find defendant waived appellate review of the trial court’s rulings.
Generally, when a defendant pleads guilty, he normally waives all non-jurisdictional defects in the proceedings leading up to the guilty plea, and precludes review of such defects either by appeal or post-conviction relief. State v. Turner, 09-1079, pp. 7-8 (La.App. 5 Cir. 7/27/10), 47 So.3d 455, 459, (citing State v. Wingerter, 05-697, pp. 5-6 (La.App. 5 Cir. 3/14/06), 926 So.2d 662, 665). Additionally, once a defendant is sentenced, only those guilty pleas that are constitutionally infirm may be withdrawn by appeal or post-conviction relief. State v. McCoil, 05-658, p. 7 (La.App. 5 Cir. 2/27/06), 924 So.2d 1120, 1124. A guilty plea is constitutionally infirm if it is not entered freely and voluntarily, if the Boykin[11] colloquy is inadequate, or when a defendant is induced to enter the plea by a plea bargain or what he justifiably believes was a plea bargain and that bargain is not kept. Id. In such a case, the defendant has been denied due process of law in that the plea was not given freely and knowingly. State v. Dixon, 449 So.2d 463, 464 (La.1984).
The record shows that defendant was aware he was pleading guilty to a reduced charge of forcible rape, aggravated burglary, as well as to a misdemeanor charge. He was advised of his right to a jury trial, his right to confrontation, and his privilege against self-incrimination, as required by Boykin, on both the charges. Defendant was advised of these rights by means of the waiver of rights and guilty plea form. The defendant signed the waiver of rights and guilty plea form indicating that he understood that he was waiving these rights by pleading guilty. Defendant was also advised of these rights during the guilty plea colloquy with the trial court in which the court separately advised defendant of his rights with regard to his guilty pleas.. Defendant indicated during the colloquy that he understood that he was waiving these rights.
During the guilty plea colloquy, defendant indicated that he understood that he would be sentenced to twenty years at hard labor on the forcible rape charge, with two of those years without the benefit of parole, probation, or suspension of sen *39 tence; and twenty years at hard labor on the aggravated burglary charge, both to |1firun concurrently, to be served with the Department of Corrections. The waiver of rights and guilty plea form also indicated the defendant’s acknowledgement of the sentence he was to receive.
As defendant indicated his understanding of the sentence, both in court and on his waiver of rights and guilty plea form, the proceedings surrounding defendant’s guilty plea and sentence do not present any non-frivolous issues to be raised on appeal.
Because appellant counsel’s brief adequately demonstrates by full discussion and analysis that she has reviewed the trial court proceedings and cannot identify any basis for a non-frivolous appeal and an independent review of the record supports counsel’s assertion, defendant’s conviction and sentence are hereby affirmed and appellate counsel’s motion to withdraw as attorney of record be granted.

ERROR PATENT DISCUSSION

The defendant requests an error patent review. However, this Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Wetland, 556 So.2d 175 (La.App. 5 Cir.1990) regardless of whether defendant makes such a request. The following matters were discovered:
The citation for forcible rape, which is LSA-R.S. 14:42.1, was omitted from Count I of the amended bill of indictment. However, the State, both in its written and oral amendments to Count I of the indictment, includes that the amended charge is forcible rape. Further, both the guilty plea colloquy, and the guilty plea form, which was signed and initialed by the defendant, reflect the proper charge of forcible rape.
Art. 1, § 13 of the Louisiana Constitution requires that an indictment inform a defendant of the nature and cause of the accusation against him. State v. Page, 08-531, p. 16 (La.App. 5 Cir. 11/10/09), 28 So.3d 442, 453, writ denied, 09-2684 (La.6/4/10), 38 So.3d 299. This requirement is implemented by LSA-C.Cr.P. art. 464 which provides:
The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice. (Emphasis added).
Moreover, LSA-C.Cr.P. art. 487 states that an indictment shall not be invalidated because of a defect as to its form; and, the court may amend the indictment to correct a formal defect at any time.
In the present case, there is no indication that the defendant was prejudiced by the State’s omission of the statutory citation for forcible rape. The guilty plea form, as well as the transcript of the guilty plea colloquy indicates that the defendant knew the correct charge to which he pled, forcible rape and was not misled as to the accusation against him.
We also note that the trial judge failed to impose defendant’s sentence on Count I without the benefit of parole, probation, or suspension of sentence for at least two years, as required by LSA-R.S. 14:42.1(B).[12] Although the trial judge failed to mention the restriction, such conditions are deemed to exist by operation of *40 law, under LSA-R.S. 15:301. State v. Tapps, 02-574, pp. 13-14 (La.App. 5 Cir. 10/29/02), 832 So.2d 995, 1004, writ denied, 02-2921 (La.4/21/03), 841 So.2d 789; (citing State v. Williams, 00-1725, pp. 14-15 (La.11/28/01), 800 So.2d 790, 801). Normally, such a situation would negate the necessity for a remand to the district court. However, in this case, as in Tapps, supra, the language of the applicable sentencing provision, LSA-R.S. 14:42.1, implicates the discretion of the trial judge in determining the exact length of time that benefits are to be withheld. Accordingly, we must remand the case for clarification of the sentence in compliance with LSA-R.S. 14:42.1(B).
In all other respects, the conviction and sentence of defendant Humberto Vargas is affirmed. The matter is remanded for clarification of the sentence as discussed above. Appellate counsel’s motion to withdraw is granted.

CONVICTION AND SENTENCE AFFIRMED; CASE REMANDED FOR CLARIFICATION; MOTION TO WITHDRAW GRANTED

. The preliminary examination concluded at the beginning of cross-examination of the victim due to a conflict with defense counsel's interpreter. Further, defense counsel was only able to ask a few questions before the issue arose and the hearing was continued.

. The victim testified through an interpreter.

. The procedure set forth in Benjamin for compliance with Anders was sanctioned by the Louisiana Supreme Court in State v. Mouton, 95-0981, pp. 1-2 (La.4/28/95), 653 So.2d 1176, 1177 (per curiam), and adopted by this Court in State v. Bradford, 95-929, pp. 3-4 (La.App. 5 Cir. 6/25/96), 676 So.2d 1108, 1110.

. The United States Supreme Court most recently reaffirmed its position in Anders in Smith v. Robbins, 528 U.S. 259, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).

. State v. Crosby, 338 So.2d 584 (La.1976).

. A copy of the letter this Court sent to defendant on October 12, 2010, is attached.

. Defendant's sentencing range was in between 5 and 14 years for the forcible rape and between 1 and 30 years for the aggravated rape.

.In Ayo, the trial court curtailed cross-examination of a witness by the defense at a combined hearing on a motion to suppress and *37 preliminary examination. 08-468 at 16-17, 7 So.3d at 97. The defendant objected to the suppression of evidence; however, he failed to proffer the testimony. Id. This Court held that defendant’s constitutional confrontation rights were not affected in a pre-trial matter; and, further, that he was precluded from raising the issue for review on appeal because there was no proffer of the excluded testimony. Id.

. A buccal sample is taken by rubbing a Q-tip in the inside of the mouth in order to obtain fluid to test a person’s DNA. State v. Polizzi, 05-478, p. 7 (La.App. 5 Cir. 2/14/06), 924 So.2d 303, 308, writs denied, 06-1052 (La. 11/3/06), 999 So.2d 751 and 08-2006 (La. 1/30/09) 6 So.3d 1274.

. State v. Crosby, 338 So.2d 584 (La.1976)(there is no bar from reviewing assignments of error specifically reserved at the time of the guilty plea, where the trial court accepted the guilty plea upon the condition).

. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

. It is noted that the guilty plea colloquy reflects that defendant understood that two *40 years of defendant’s sentence on the forcible rape charge would be served without benefit of parole, probation, or suspension of sentence. However, neither the transcript of formal sentencing nor the commitment reflects that the sentence will be served without benefits for at least two years.