STATE OF LOUISIANA

VERSUS

KEVIN JENKINS

NO. 22-KP-443

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPLICATION FOR SUPERVISORY REVIEW FROM THE
TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 21-5626, DIVISION "G"
HONORABLE E. ADRIAN ADAMS, JUDGE PRESIDING

February 27, 2023

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Stephen J. Windhorst, and Hans J. Liljeberg

**<u>AFFIRMED; REMANDED FOR CLARIFICATION OF SENTENCING</u>**
**<u>RESTRICTIONS</u>**
    **SJW**
    **JGG**
    **HJL**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/RESPONDENT,
STATE OF LOUISIANA
    Thomas J. Butler

COUNSEL FOR DEFENDANT/RELATOR,
KEVIN JENKINS
    Zachary W. Orjuela

**WINDHORST, J.**

Defendant, Kevin Jenkins, seeks review of his May 31, 2022 misdemeanor conviction of domestic abuse battery following a bench trial. For the following reasons, we affirm his conviction and sentence and remand the matter for clarification of defendant's sentence as to the restriction of benefits.

**PROCEDURAL HISTORY**

On February 23, 2022, the Jefferson Parish District Attorney filed a bill of information charging defendant, Kevin Jenkins, with domestic abuse battery in violation of La. R.S. 14:35.3. Defendant pled not guilty.

On May 27, 2022, the State filed a notice of intent to use and introduce 911-telephone calls and recordings into evidence. In that motion, the State asserted that the 911 calls and recordings maintained by the Jefferson Parish Sheriff's Office made on October 16, 2021, are self-authenticating certified records of a regularly conducted business activity. The State asserted that the copy of the 911 calls, the recordings, and the event history report satisfy the requirements of La. C.E. art. 803(6) and La. R.S. 13:3733 and are self-authenticating pursuant to La. C.E. art. 902(11). The State attached to the motion a certificate of authenticity relative to the 911 records signed by Lieutenant LaShonda Woodfork.[1] Based on this, the State gave notice of its intent to introduce the 911 calls, recordings, and the report at trial.

On May 31, 2022, the day of trial, defendant made an oral motion to quash the bill of information based on the absence of the victim at trial and the denial of his right to confront his accuser. Defendant argued that the State was going to rely on hearsay evidence (the 911 call) to convict him, and that the State had to produce the victim because she was available and he had right to cross-examine her. The State responded that the 911 call was non-testimonial and did not constitute hearsay, but that if it did,

---

[1] The Certificate stated, "I am the designated representative for the Custodian of Records. I certify that these records are recorded, created, and kept in the ordinary course of business at the Kenner Police Department's 911 Communication District. I further certify that such records are true and correct."

it would be admissible under the business records exception. The trial court denied the motion to quash.

After denying the motion to quash, the case proceeded to a judge trial, and the trial judge found defendant guilty as charged. On June 28, 2022, the trial court sentenced defendant to six months imprisonment in the parish prison. Defendant timely filed a writ application, challenging his conviction by arguing that the 911 call admitted at trial was hearsay and violated his right to confrontation.

**EVIDENCE**

Defendant was convicted of domestic abuse battery based on an incident that occurred on October 16, 2021. Authorities first became aware of the incident when the victim, Robin Shifter, called 911. During that call, the victim identified herself and provided her address. She relayed that she was "just hit on by [her] baby daddy," and identified him as Kevin Jenkins. She stated that he hit her on the left side of her jaw and cracked some of her teeth on the right side; that blood was coming out of her mouth; and that he punched her in her leg three times. She also stated that defendant was no longer there and that she was pregnant. During the call, she provided details regarding the clothes defendant was wearing and the vehicle he was driving when he left.

Officer Gabriel Marquez with the Kenner Police Department, who responded to the 911 call, testified at trial to the following. Upon arrival to the crime scene, he met the victim and saw that she was upset. He noticed that the left side of her face was red. Officer Marquez viewed photographs of her injuries taken at the scene of the crime, and testified that the photographs accurately depicted the victim's injuries and her version of events. The photographs showed the victim's side profile where she indicated she was struck, the jawline area of the left side of her face where she said she was struck, and bruising on her leg. Officer Marquez also testified that the victim told him that defendant was the perpetrator.

Defendant testified at trial as follows. He and the victim dated for many years, but they were no longer together. He continued to live with the victim because of the three children they have together. At the time of the incident, defendant had a new girlfriend. The victim and his girlfriend became pregnant around the same time. Defendant asserted that this made the victim angry, and that she "was doing everything to sabotage" him. Defendant denied striking or kicking the victim on the night in question.

The State introduced recorded phone calls made by defendant while he was in jail. No testimony was presented as to who was on the other end of the phone, but the conversation indicates that the other person was the victim in this matter.

During one call, defendant told the victim to come get him and to drop the charges. She replied that he told her he would kill her and her kids, and defendant denied it. She asked, "Drop the charges so you can do this again?" She said she was trying to make sure she was safe, and that defendant did not care "about the life in [her] stomach." Defendant told her he did care, and again asked her to drop the charges. She refused and responded that she is not "about to put [herself] in another situation" and that this was not the first time he "hit on" her.

Defendant told her to call his family and that they would ensure he does not go around her. The victim responded that his family told her to make sure that he goes to jail and that he should have already been locked up because he should not be hitting her. She asserted that she was trying to take care of defendant for his birthday, but instead he hit her. Defendant said that he was sorry. They again discussed the incident, and both acknowledged the children's presence in the room. The victim said he told them to shut up while in the kitchen and in "the room." Defendant denied this and said he told them their mom was okay. The victim replied that the children were scared that he would also beat them. The victim then stated that defendant hit her in front of her baby. Defendant apologized, but the victim

responded that he is only sorry because she stopped him. Defendant stated that he messed up. The victim said that she has children and cannot care for them if she is dead. The victim was obviously still in fear of defendant.

**LAW and ANALYSIS**

Defendant asserts that the trial court committed a prejudicial error in admitting the 911 call containing hearsay and testimonial statements without an opportunity for cross-examination of the victim.

### *Confrontation Clause*

Defendant asserts that the trial court should not have admitted the 911 call because the substance of the call was "testimonial" in nature, and therefore violated his rights under the Confrontation Clause of the Sixth Amendment, which guarantees the right of a criminal defendant "to be confronted with the witnesses against him." The United States Supreme Court has held that this guarantee includes the right to cross-examine witnesses. Cruz v. New York, 481 U.S. 186, 189, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987); State v. Harris, 15-485 (La. App. 5 Cir. 4/13/16), 190 So.3d 466, 479, writ denied, 16-902 (La. 5/12/17), 220 So.3d 746.

In Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." The Court held that the admission of a recorded statement made by the defendant's wife during interrogation violated the defendant's right under the Confrontation Clause because the statement was hearsay, because it was testimonial in nature, and because his wife did not testify at trial due to the state's marital privilege. Id.

In Davis v. Washington, 547 U.S. 813, 817, 126 S.Ct. 2266, 2271, 165 L.Ed.2d 224 (2006), the United States Supreme Court considered the meaning of

"testimonial statements" in the context of the Confrontation Clause, wherein the victim called 911 to report a domestic altercation with her ex-boyfriend. During the call, the victim identified her attacker and described the specifics of the ongoing assault in response to the 911 operator's questions. Id., 547 U.S. at 817-18, 126 S.Ct. at 2271. The trial court admitted the recording of the 911 call into evidence despite the fact that the victim did not testify at trial. Id., 547 U.S. at 822, 126 S.Ct. at 2273-74. The Davis Court explained that the recordings were non-testimonial in nature and therefore admissible because they were made to enable police assistance to meet an ongoing emergency. Id. It also stated that recordings are testimonial when the circumstances objectively indicate there is no ongoing emergency, and the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. Id.

The Davis Court reasoned that the statements were non-testimonial because the initial interrogation conducted in a 911 call is ordinarily not designed to prove some past fact, but to describe current circumstances requiring police assistance. Davis, 547 U.S. at 827, 126 S.Ct. at 2276. The Davis Court stated that the questions posed and the circumstances of the call indicated that the primary purpose was to enable police assistance to meet an ongoing emergency. Another reason the Court found that the statements were non-testimonial was because the victim's answers were frantic and provided over the phone, in an environment that was not tranquil or even safe. Id.

In determining whether a statement is testimonial or non-testimonial, courts have applied a three-part inquiry to evaluate the "primary purpose" of the statements. State v. Payne, 17-553 (La. App. 5 Cir. 10/17/18), 258 So.3d 1015, 1022-1023, citing Michigan v. Bryant, 562 U.S. 344, 360-361, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011). The first consideration is whether there was an ongoing emergency. Id. The existence of an "ongoing emergency" at the time of an encounter between an

individual and the police is among the most important circumstances in determining the "primary purpose" of an interrogation. Id. This is a "highly context-dependent inquiry." Id. The existence *vel non* of an ongoing emergency, however, is not dispositive of whether a statement is testimonial. Id.

The second consideration is the formality of the interrogation. Id. More formal interrogations are generally indicative of non-emergency situations and "testimonial" statements being given. Id.

The third consideration is the "primary purpose" of the interrogation based on the statements and actions of both the declarant and the interrogator. Id. at 1023. This inquiry examines both parties as reasonable actors in their actual circumstances, including the severity of the victim's injuries. Id.

In this case, defendant asserts that the ongoing emergency element present in Davis is not satisfied here because the alleged emergency ended when defendant left the house and drove away from the premises before the victim made the 911 call. We disagree. Although the victim's statements during the call indicate that defendant had "just left" when she made the 911 call, the victim had no way of knowing when or if defendant would return. Testimony at trial revealed that defendant and the victim lived together. Thus, the victim could have reasonably believed that defendant was likely to return at any time and could be an ongoing threat. In addition, there was still an urgency because the victim stated on the call that she had just been hit, and that she was pregnant with defendant's child. Further, most of the information relayed to the 911 operator was necessary to evaluate and resolve the emergency, to provide the required assistance, and to identify the perpetrator. Considering these factors, we find that this 911 call involved an ongoing emergency, even though defendant had recently left the scene.

The second consideration, the formality of the interrogation, also indicates the call was not testimonial. The interrogation was not in a formal setting such as a

police station but was in a 911 phone call in the immediate aftermath of the incident and prior to the arrival of any medical services or the police. The questions asked by the operator related to the well-being and location of the victim, as well as the whereabouts and identity of the perpetrator. These facts support that the statements were informal and non-testimonial.

The third consideration, the primary purpose of the statement, further indicates that the call was not testimonial. The questioning on the call was not part of an investigation into criminal past conduct. The victim called 911 to request police assistance and to describe the immediate incident. The victim informed the operator that she was pregnant, described her injuries to the operator, and provided details to identify defendant, including the clothing he was wearing and the vehicle he was driving when he left. All of this indicates that the purpose of the call was to obtain emergency assistance and protection from further harm.

Based on the foregoing considerations, we find that the 911 call at issue here was non-testimonial. Non-testimonial statements do not cause the declarant to be a witness within the meaning of the Sixth Amendment and thus are not subject to the Confrontation Clause. Harris, 190 So.3d at 480. See also, Payne, 258 So.3d at 1021-1024 (911 call was nontestimonial because the shooting at issue involved an "ongoing emergency"; questioning was informal, occurred in the immediate aftermath of the shooting and before emergency services arrived; and 911 operator's questioning was to enable police assistance); State v. Norah, 12-1194 (La. App. 4 Cir. 12/11/13), 131 So.3d 172, writs denied, 14-84 (La. 6/13/14), 140 So.3d 1188 and 14-0082 (La. 6/20/14), 141 So.3d 287 (911 call made in the immediate aftermath of a shooting at a nightclub that took place in the public and identifying perpetrator's vehicle and clothing was non-testimonial). We therefore conclude that the admission of the non-testimonial 911 call did not violate defendant's right of confrontation, and that the trial court did not err in admitting it into evidence.

*Hearsay*

Defendant argues that it was error to admit the 911 call because it constitutes hearsay. Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted therein. La. C.E. art. 801(C). Hearsay is not admissible except as otherwise provided by the Code of Evidence or other legislation. La. C.E. art. 802.

La. C.E. art. 803(2) is the hearsay exception for an excited utterance, which is "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." A trial judge's determination regarding admissibility of evidence will not be overturned by an appellate court absent a clear abuse of the trial judge's discretion. State v. Maize, 16-575 (La. App. 5 Cir. 6/15/17), 223 So.3d 633, 649. Further, while a statement may constitute inadmissible hearsay, if the statement is merely cumulative or corroborative, the admission of such statement is harmless error. State v. Francois, 13-616 (La. App. 5 Cir. 1/31/14), 134 So.3d 42, 56, writ denied, 14-431 (La. 9/26/14), 149 So.3d 261.

The victim's statements in the 911 call fall within the excited utterance exception to the hearsay rule as provided in La. C.E. art. 803(2). The excited utterance exception under the hearsay rules requires that there be an occurrence or event sufficiently startling to render normal reflective thought processes of an observer inoperative. State v. Lee, 22-1314 (La. 11/16/22), 349 So. 3d 988, 989. In the instant case, during the victim's 911 call, she made statements relating to a startling event while she was under distress caused by a traumatic incident. The victim had just been beaten with her children present by their father. Considering the stressfulness of the situation, we find that the victim statements in the 911 call were excited utterances. See, State v. Jordan, 21-585 (La. App. 4 Cir. 12/21/21), 334 So.3d 417, 423, writ denied, 22-141 (La. 3/2/22), 333 So.3d 834; State v. Green,

50,071 (La. App. 2 Cir. 8/12/15), 174 So.3d 714, 719; State v. Ramirez, 09-530 (La. App. 5 Cir. 12/29/09), 30 So.3d 833, 846-847.

However, to the extent that any part of the 911 call does not fall within a hearsay exception, the admission of it was harmless error because it was merely cumulative and corroborative of other admissible evidence. The Louisiana Supreme Court has adopted the federal test for harmless error announced in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), as refined by Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), which asks whether the guilty verdict rendered in this trial was surely unattributable to the error. State v. Anthony, 17-372 (La. App. 5 Cir. 12/30/20), 309 So.3d 912, 922, writ denied, 21-176 (La. 10/12/21), 325 So.3d 1067. The admission of hearsay testimony is harmless error where the effect is merely cumulative or corroborative of other testimony adduced at trial. State v. Maize, 16-575 (La. App. 5 Cir. 6/15/17), 223 So.3d 633, 653, writ denied, 17-1265 (La. 4/27/18), 241 So.3d 306.

Defendant herein was convicted of domestic abuse battery. La. R.S. 14:35.3 provides that domestic abuse battery is the intentional use of force or violence committed by one household member or family member upon the person of another household member or family member. We conclude that the guilty verdict for domestic abuse battery was surely unattributable to any alleged error in admitting the 911 call. Officer Marquez testified regarding the victim's injuries and verified that the photographs accurately depicted her injuries. He also testified that the victim informed him that the defendant was the perpetrator, and that the victim's injuries were consistent with her version of how the incident occurred.

Considering the foregoing, this assignment of error lacks merit.

**ERRORS PATENT REVIEW**

On a misdemeanor conviction, defendant is not entitled to an appeal or an errors patent review. This court, however, has generally conducted an errors patent review in reviewing a misdemeanor conviction in an application for supervisory review of the case. State v. Carruth, 94-147 (La. App. 5 Cir. 9/27/94), 643 So.2d 1319, 1322. Although we do not have a complete record in this case, we have reviewed the available information for an errors patent review. La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975).

La. R.S. 14:35.3 C states that at least 48 hours of the sentence imposed shall be served without the benefit of parole, probation, or suspension of sentence. The sentencing minute entry reflects that during sentencing, the trial court did not restrict the benefits of probation, parole, or suspension of sentence for any period of time. We do not have the sentencing transcript; and thus, cannot confirm that the benefits were not restricted. Generally, when a trial court does not mention the restriction of benefits, such conditions are deemed to exist by operation of law under La. R.S. 15:301.1. State v. Shelby, 18-186 (La. App. 5 Cir. 12/27/18), 263 So.3d 1223, 1228. However, in this case, La. R.S. 15:301.1 does not cure the lack of a specified time period for the restriction of benefits because the portion of the sentence to be served without benefits is left to the discretion of the trial court. For that reason, we remand the case for clarification of defendant's sentence as to the restriction of benefits, in accordance with La. R.S. 14:35.3 C, only as it relates to the restriction of benefits. State v. Vargas, 10-788 (La. App. 5 Cir. 5/10/11), 66 So.3d 29, 40.

**DECREE**

Accordingly, for the reasons set forth herein, we remand the matter for clarification of defendant's sentence as to the restriction of benefits. In all other respects, we affirm defendant's conviction and sentence.

**<u>AFFIRMED; REMANDED FOR CLARIFICATION OF SENTENCING RESTRICTIONS</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY <u>**FEBRUARY 27, 2023**</u> TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**22-KP-443**

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE E. ADRIAN ADAMS (DISTRICT JUDGE)
THOMAS J. BUTLER (RESPONDENT)          ZACHARY W. ORJUELA (RELATOR)

**MAILED**
NO ATTORNEYS WERE MAILED